## WHITNEY vs. TIBBITS and another.

Where the question was, whether, on a pledge of flour stored in a warehouse in Milwaukee, a delivery, by the pledgor, of the warehouse receipt, without indorsement, constituted a sufficient delivery of the property to sustain the pledge as against subsequent attaching creditors of the pledgor, and it appeared that said receipt did not run to bearer, but stated that the flour was "deliverable only on return of the receipt," &c.: *Held*, that the plaintiff was entitled to show that, by a general custom in Milwaukee, flour in store was transferred by a delivery of such receipts without indorsement.

APPEAL from the Circuit Court for *Milwaukee* County.

One Hoyt stored in the warehouse of the defendants in Milwaukee, a lot of flour, and took a warehouse receipt therefor, on the 11th day of June, 1862. On the same day one Comstock agreed to purchase the flour, provided he could get a loan upon it in store. Hoyt delivered to Comstock the receipt, for the purpose of enabling him to procure such loan, and Comstock went to the plaintiff, *Whitney*, and obtained from him a loan of $975 upon the flour, transferring to him the receipt, which was not indorsed. It was agreed between them that if Comstock did not repay the loan within five days, *Whitney* should ship the flour, and sell it on Comstock's ac-

count. Comstock, after obtaining the money, did not pay Hoyt for the flour, nor did he repay the loan to *Whitney*. A few days after said 11th of June, Hoyt commenced an attach ment suit against Comstock for the amount due him on said sale, and served garnishee process on the defendants herein. Either before or after the service of such process, *Whitney* de- manded the flour of the defendants, and they refused to de- liver it. Thereupon *Whitney* commenced this action to recov- er the flour, and the defendants answered that the same was the property of Comstock, and as such was attached in their hands under said garnishee process. On the trial (without a jury), the court found that the transaction between Comstock and *Whitney* was a loan, and that the flour in question was pledged as security for the indebtedness; and held that, under the statute, the receipt not having been indorsed, a delivery of it did not transfer the title to the flour, and *Whitney* acquired no right of property in the flour as against the creditors of Comstock. Judgment was rendered accordingly; from which the plaintiff appealed.

The facts in regard to the form of said receipt, and also in regard to evidence offered by the plaintiff and rejected by the court, will sufficiently appear from the opinion.

*O. H. Waldo*, for appellant.

*E. Mariner*, for respondents.

*By the Court*, PAINE, J. This case presents substantially the same question as that determined in *Rice et al. vs. Conkey et al.*, decided at this term (ante, p. 351). The question here is, whether, on a pledge of wheat stored in a warehouse, a deliv- ery, by the pledgor, of the warehouse receipt, without indorse- ment, constitutes a sufficient delivery of the property, to sus- tain the pledge as against subsequent attaching creditors of the pledgor? The only ground for any distinction between this case and that is, that here the receipt in controversy does not run to "bearer," as it did in that. It says merely that

the wheat is "deliverable only on return of this receipt," &c. But we have come to the conclusion that this difference in the form of the receipt cannot change the result. The question in either case is, was there a delivery of the property? The plaintiff offered evidence to show that, by a general custem in Milwaukee, grain in store was transferred by a delivery of such receipts without indorsement. This was rejected, and we think erroneously. For the existence of such a custom serves to throw light upon the intention of the parties in delivering the receipt. It shows that the possession of the receipt gave to the plegdee actual control and dominion over the property, which control would be acknowledged by the warehousemen who had issued it. It showed that the receipt, even without indorsement, constituted in fact the "usual evidence of title," the delivery of which is, by all the books, a good delivery of the property.

It seems to me to prese t a stronger case of delivery than some that are usually referred to as sufficient. Take for example the one of a delivery of the key of the warehouse where the property is stored. In that case, the vendor, owning the warehouse, might, notwithstanding the delivery of the key, still keep possession of his warehouse and resume control of the property. But where the property is in the warehouse of a stranger, the vendor, by delivering the receipt, divests himself of all the means of controlling or retaining the property, and gives them to the vendee quite as effectually as would the possession of the key.

The material thing is, that the vendor delivers to the vendee that which enables the latter in fact to take and control the property. And it is difficult to imagine what could more effectually do this than the delivery of such a receipt, under such a custom, the property being in store in the same place where the transfer is made. It is then subject to the immediate actual control of the vendee, and this ought to be held a suf-

ficient delivery to sustain the transfer, whether sale or pledge. See *Pratt vs. Parkman*, 2 Pick., 42.

As this would have been a good pledge, if the statute referred to in *Rice vs. Conkey* had not been passed, for the reasons there stated there is nothing in that statute that requires a different effect to be given to it.

The judgment is reversed, with costs, and the cause remanded for a new trial.