THE MERCHANTS' & MANUFACTURERS' BANK OF DETROIT v. WELLINGTON HIBBARD ET AL.

*Warehouse receipts as security—Seizure by pledgee.*

A warehouseman having property of his own in store may pass title to it by the execution and delivery of an ordinary warehouse receipt.

He may also pledge it by such a receipt to secure the payment of his own indebtedness. And where the property is wheat, the pledge is not inoperative by reason of the wheat being part of a larger mass and not separated or distinguished when the receipt is given.

A warehouse receipt pledged as security for a loan "eighteen thousand bushels of No. 1 white and No. 2 red winter wheat, or an equivalent in flour." It was given by millers, who were engaged in manufacturing flour, and who in doing so mixed the white and red wheat. *Held*, that the receipt was not void for indefiniteness, but the pledgee might take under it an equal proportion of each kind of wheat, or, if the wheat was not on hand, an equivalent in flour.

Error to Kent. Submitted Jan. 24–25. Decided Apr. 12.

REPLEVIN. Defendants bring error. Affirmed.

*Blair*, *Kingsley & Kleinhans* and *M. J. Smiley* for appellants. A transfer of a warehouse receipt as security is a pledge and not a mortgage : *Mechanics' Association v. Conover* 14 N. J. Ch. 219 ; *Brewster v. Hartley* 37 Cal. 25 ; "The Law of Collateral Securities" 1 Am. L. Rev. (N. S.) 99 ; *Parshall v. Eggert* 54 N. Y. 18 ; *Ins. Co. v. Kiger* 103 U. S. 352 ; *Casey v. Cavaroc* 96 U. S. 467 ; *Way v. Davidson* 12 Gray 465 ; *Sexton v. Graham* 53 Ia. 181 ; *Geddes v. Bennett* 6 La. Ann. 516 ; *Adams v. Merch. Nat. Bank* 2 Fed. Rep. 174 ; the sale or pledge of goods from a larger mass passes no title and confers no lien until the particular goods sold or pledged are separated : Benj. on Sales (3d Am. ed.) § 352 ; see *Campbell v. Mersey Docks* 108 E. C. L. 412 ; *Aldridge v. Johnson* 90 E. C. L. 885 ; *White v. Wilks* 5 Taunt. 176 ; *Shepley v. Davis* id. 617 ; *Busk v. Davis* 2 M. & S. 398 ; *Hahn v. Fredericks* 30 Mich. 223 ; *First National Bank v. Crowley* 24 Mich. 492 ; *Lingham v. Eggleston* 27 Mich. 324 ; *Ortman v. Green* 26 Mich. 209 ; *Crapo v. Seybold* 35 Mich. 171 ; *Richardson v. Alpena Lumber Co.* 40 Mich. 203 ; *Scudder v. Worster* 11 Cush. 574 ; *Elgee Cotton Cases* 22 Wal. 192 ; *Hutchinson v. Hunter* 7 Penn. St. 140 ; *Woods v. McGee* 7 Ohio 467 ; except where all parts of the mass are alike in kind and value : *Kimberly v. Patchin* 19 N. Y. 330 ; *Iron Co. v. Buhl* 42 Mich. 86 ; *Carpenter v. Graham* id. 191 ; *Hurff v. Hires*

11 Vroom 581: 18 Am. L. Reg. N. S. 161; *Chapman v. Shepard* 39 Conn. 413; *Waldron v. Chase* 37 Me. 414; *Morrison v. Dingley* 63 Me. 553; *Pleasants v. Pendleton* 6 Rand. 473; *Cushing v. Breed* 14 Allen 376.

*Norris & Uhl* for appellee. Transfer of a warehouse receipt in pledge gives the right of possession of the property: *Wilson v. Little* 2 Comst. 443; *De Wolf v. Gardner* 12 Cush. 19; *Gibson v. Stevens* 8 How. 384; *Gregory v. Wendell* 39 Mich. 340; a vendor may assume the character of bailee of the purchaser and become the latter's agent for the possession of the merchandise: Benj. on Sales § 182; *Broadwell v. Howard* 77 Ill. 305; *Lobdell v. Stowell* 51 N. Y. 73; owners of grain in a common mass become tenants in common of the mass: *Nelson v. Brown* 53 Ia. 555; *Erwin v. Clark* 13 Mich. 10; even though the grain is distributed by the bailee in different bins or buildings: *Cushing v. Breed* 14 Allen 380; and an owner can follow his grain where he can identify it: *Tripp v. Riley* 15 Barb. 333; *Young v. Miles* 20 Wis. 615; *Clark v. Griffith* 24 N. Y. 595; *Sexton v. Graham* 53 Ia. 191.

COOLEY, J. In this action of replevin the right to a certain quantity of wheat and to flour manufactured therefrom comes in question.

From the evidence incorporated in the record it appears that on the 16th day of January, 1880, the defendants with some others were doing a merchant milling business in the city of Grand Rapids under the co-partnership name of Hibbard & Graff, in two mills known respectively as the Crescent Mills and the Valley City Mills. On that day Mr. Hibbard, one of the defendants, made an application to the cashier of the plaintiff for the loan to their firm of the sum of twenty thousand dollars on the firm note indorsed by L. H. Randall and H. W. Hinsdale. The application was taken under advisement, and after consideration Mr. Hibbard was notified that the firm could have the desired loan provided that in addition to the proposed indorsements they would give a warehouse receipt for eighteen thousand

bushels of wheat. These terms were accepted, and on May 17, 1880, a note and warehouse receipt were given in the following terms :

"GRAND RAPIDS, MICHIGAN, January 17, 1880.
"$20,000.00.

"May first after date we promise to pay to the order of L. H. Randall and H. W. Hinsdale twenty thousand dollars, at the Merchants' & Manufacturers' National Bank of Detroit, value received, with interest at the rate of eight per cent. per annum after maturity.   Having deposited with the Merchants' & Manufacturers' National Bank of Detroit as collateral security personal property as stated below, we hereby authorize the sale of said personal property at public or private sale, and with or without notice, on the non-performance of this promise.   Warehouse receipt for 18,000 bushels No. 1 white Michigan and No. 2 winter wheat.
                                        HIBBARD & GRAFF."

"Endorsed : L. H. RANDALL,
            H. W. HINSDALE.

"Received, Grand Rapids, Michigan, January 17, 1880, in store for account of the Merchants' & Manufacturers' National Bank of Detroit, Mich., eighteen thousand (18,000) bushels No. 1 white and 2 red winter wheat, to be delivered in wheat or its equivalent in flour upon return of this receipt properly endorsed, to be kept insured for account of whom it may concern.                   HIBBARD & GRAFF."

It further appears that at the date of these transactions, Hibbard & Graff were not only buying, storing, manufacturing, shipping, and selling wheat on their own account, but were also receiving into their mills wheat to be stored for others, for which they issued the customary warehouse receipt.   At the time of the transaction with the plaintiff the firm had in store about 35,000 bushels of wheat of the kinds specified in the receipt issued to the plaintiff.   The white and red wheat were kept separate in store, but were mixed for grinding in the proportion of one-half to two-thirds white to one-third to one-half red.   The market value of the red was superior to that of the white.   The firm constantly manufactured from the stock on hand until they failed in March, 1880.   There was evidence tending to show that at that time there were outstanding receipts for more wheat than the firm had on hand, but besides the

receipt of the plaintiff only three small receipts were proved, and no question is made in this suit between the holders of those and the plaintiff. When Hibbard & Graff failed, one Philip M. Graff claimed the wheat and flour then in the mills under a chattel mortgage from the firm, but the *bona fides* of that mortgage was submitted to the jury and their conclusion was against it. It therefore cuts no figure in this case on appeal. Plaintiff demanded the wheat under its receipt when the firm failed, and not obtaining it otherwise, sued out a writ of replevin, on which a part of the specified quantity of wheat was delivered and an equivalent in flour for the remainder.

Upon these facts the jury found the defendants to be the general owners of the wheat and flour replevied, and the plaintiff to have a special property therein to the amount of $20,000. The value was found to be $21,322, and the defendants took judgment for this sum less the amount of the plaintiff's special property.

The jury reached this conclusion under instructions from the circuit judge that the receipt issued by Hibbard & Graff to the plaintiff constituted a valid pledge in the nature of a mortgage of the property described therein as security for the note to which it referred. The appellants deny the soundness of these instructions.

It is agreed on both sides that the receipt did not constitute a mortgage of the wheat, and the plaintiff made no attempt to sustain it as a mortgage. On the part of the defendants it was contended that it did not constitute a pledge; for possession is essential to a pledge, and of this wheat possession was neither given nor contemplated. The defendants do not deny that title may pass by the delivery of a warehouse receipt in pursuance of an actual sale, nor, as we understand it, do they dispute that when one is owner of property represented by a warehouse receipt or other instrument of similar nature, he may make pledge of it and transfer constructive possession by delivering to the pledgee the instrument that represents his property. *Meyerstein v. Barber* L. R. 2 C. P. 38, 661; s. c. L. R. 4 H. L. 319;

*National Bank v. Dearborn* 115 Mass. 219; *Whitney v. Tibbitts* 17 Wis. 359; *Taylor v. Turner* 87 Ill. 296. But in this case the plaintiff never had either title or actual possession of the property; it was not intended that the warehouse receipt should pass the title to the plaintiff. It is therefore contended that there was and could be in the case no constructive possession except such as might be implied in any case in which an owner should undertake to pledge the property, and at the same time without delivery retain it in his own hands and under his own exclusive control.

The very able arguments in the case took a wide range, but it is not requisite that we follow them and examine them in detail in order to dispose of the case. Undisputed authorities bring the legal controversy within very narrow compass, and render general discussions needless. We have already said that it is conceded a warehouseman may transfer title to property in his warehouse by the delivery of the customary warehouse receipt. In such cases there is no constructive delivery of the property whereby to perfect the sale except such as is implied from the delivery of the receipt; and where the property represented is only part of a larger mass as was the case here, there could not well be any other constructive delivery. But for the convenient transaction of the commerce of the country, it has been found necessary to recognize and sanction this method of transfer, and vast quantities of grain are daily sold by means of such receipts. *Gibson v. Stevens* 8 How. 384; *Cushing v. Breed* 14 Allen 376; *Broadwell v. Howard* 77 Ill. 305; *Gregory v. Wendell* 40 Mich. 432. We are then to see whether a constructive transfer of possession that is recognized in the case of sale shall be held inoperative in case of an attempted pledge.

If a distinction is made in the cases it ought to be upon some ground that would seem reasonable in commercial circles, where men may naturally be expected to be familiar with the ordinary methods of doing business, but not with technical rules for the government of special cases. For business purposes rules should as far as possible be general,

for the very satisfactory reason that special exceptions not made upon obvious reasons are not likely to be understood or observed. And the special exception supposed to exist in this case would be peculiarly liable to mislead if it were recognized.

If a merchant may buy grain in store and receive a transfer of title in a warehouse receipt, he would be very likely if he had occasion to receive grain in pledge, to suppose a similar receipt to be sufficient for that purpose. No reason would occur to him why it should be otherwise, and this because there would in fact be no reason except one purely technical depending on nice legal distinctions. When that is found to be the case any proposition to establish a distinction should be rejected, decisively and without hesitation; for the laws of trade are made and exist for the protection and convenience of trade, and they should not tolerate rules which have the effect to border the chambers of commerce with legal pitfalls.

This was the view expressed by the Court of Appeals of Kentucky in *Cochran v. Ripy* 13 Bush 495, in which a warehouseman having power to pass the title to property in store by a warehouse receipt was held competent to make a pledge in the same way. The same view was evidently taken by the Commission of Appeals of New York in *Parshall v. Eggert* 54 N. Y. 18, 21, though it was not deemed necessary to decide the case upon it. In that case a pledge was attempted precisely as was done here. Commissioner Johnson speaking for the court says of the receipt: " The instrument now in controversy, executed by Roche, [the warehouseman] declares the property mentioned in it to be held by him in his store for account of the plaintiffs, subject to their order, as security for his note given that day for $1450. In the absence of fraud, every instrument is to be construed so that it may have effect according to the intention of the parties, if that can be consistently with the rules of law. Had the property in question been delivered by Roche to the plaintiffs on the terms expressed in this paper, it would have created a valid pledge. * *

It may be considered as showing conclusively against Roche that the property was delivered by him to the plaintiffs, and redelivered by them to him to be held for them, according to the terms of the receipt." This is good sense; for surely there can be no substantial reason for requiring the parties to go through two ceremonial deliveries of property the actual situation and custody of which it is not proposed to disturb.

Some stress was laid by the defendants upon the fact that two kinds of wheat are mentioned in the receipt, and there is no specification of the quantity of each to be held. The circumstances explain this, for they show the two kinds were mixed in grinding, and it was evidently contemplated that flour rather than wheat should be held. In the absence of any specification of the quantity of each kind that was to be held, the legal construction we think would entitle the pledgee to an equal amount of each kind if it remained unmanufactured. The return of the officer shows that he found no red wheat and but 3051 bushels of white wheat. For the remainder he took an equivalent in flour according to the terms of the receipt.

To the elaborate argument made for the defence to show that there can be neither a sale nor a pledge of property without in some manner specially distinguishing it, we fully assent and we have no purpose to qualify or weaken the authority of *Anderson v. Brenneman* 44 Mich. 198. The instrument in that case was not a warehouse receipt, and without the clause giving a lien would not, according to any mercantile custom, have passed a title. The instrument in this case is different; and unless the specification in it of two kinds of wheat renders it inoperative for want of definiteness, it must be sustained. For the reason above given we think there is no legal difficulty on that score.

The judgment must be affirmed with costs.

MARSTON and CAMPBELL, JJ. concurred.

GRAVES, C. J.  I concur in the result.