## CHARLESTON.

FIRST NAT. BANK OF PARKERSBURG v. HARKNESS *et al.*

Submitted January 29, 1896—Decided April 8, 1896.

1. PLEDGE—BAILMENT.
   A pledge is a bailment of goods by a debtor to his creditor, to be kept by him until his debt is discharged.

2. PLEDGE—PLEDGE BY WRITING—ACCEPTANCE.
   Where a party residing in Philadelphia gives the following order to his agent in the city of Parkersburg: "Mr. C. S. Fewsmith, Parkersburg, W. Va.: Will please hold to the order of Peter C. Hollis and J. L. Richards, trustees of the estate of Samuel Simes, deceased, my stock of lubricating oil stored in my oil tank in Parkersburg, W. Va. as collateral security for the return of $7,500, borrowed and received of them, and oblige, truly, Wm. W. Harkness;" which paper was indorsed: "Accepted. Parkersburg, W. Va. May 23rd, 1888. [Signed] Crowell S. Fewsmith,"—said Fewsmith being at the time the agent of said Harkness in possession of said oil—the acceptance of such order transferred the possession of the oil to said trustees of Samuel Simes, deceased, and the oil was thereby pledged for the payment of said borrowed money.

3. PLEDGE—ATTACHMENT.
   An attachment subsequently levied upon said property as the property of said William W. Harkness would be subject to the lien created by said pledge.

4. PLEDGE—RECORDING OF PLEDGE BY WRITING.
   Although said pledge was evidenced by writing, it need not be recorded to make it effective as a lien on said oil.

J. W. VANDERVORT for plaintiff in error, cited Code W. Va. 106, s. 28; Am. & Eng. Enc. Law, Vol. 18, p. 588 and 592; Jones on Pledges, §§ 14, 36, 40, 35, 37, 41, 324, 46; Jones on Chattel Mortgages, § 5; Jones on Liens, § 34; 11 Fed. Rep. 19; Schouler on Bailments, § 205; 6 Cal. 647; Am. & Eng. Enc. Law, Vol. 18, p. 595 and note 8; 2 Pick. 207; 12 Mass. 300; 14 Pick. 497; 2 Pick. 607; 96 U. S. Rep. 467 and 479; 107 Pa. State p. 605; 5 Bing. N. C. 136

(Eng); 30 W. Va. 591; 3rd Parsons Con. 372; 45 N. Y. Rep. 614; 12 Pick. 76; 11 Com. Bench (N. S.) 730.

HUTCHINSON, HUTCHINSON & CAMDEN for defendant in error, cited Sto. Bail. § 287, 288; 6 Pick. 607; 5 Pick. 58; 96 U. S. 467; 45 N. Y. 621; 30 W. Va. 586; Bigelow, Estop. 577; 34 Wis. 550; Code, c. 74, ss. 3, 5.

ENGLISH JUDGE:

On the 29th day of March, 1894, the First National Bank of Parkersburg brought an action of debt in the Circuit Court of Wood county against one William W. Harkness, and at the same time obtained an order of attachment directed to the sheriff of Wood county, who levied the same on a certain lot of land situated in the city of Parkersburg, and described in the return on said order of attachment; also upon the following personal property located on said lot, to wit, one iron oil tank of the capacity of about three thousand barrels, and on about one thousand eight hundred barrels of crude oil in said tank, near the outer depot of the Baltimore & Ohio Railroad, Parkersburg, W. Va. on the 30th day of March, 1894, at half past 8 o'clock a. m.   On the same day another order of attachment was issued in said suit, directed to the sheriff of Ritchie county, which was levied on the 30th day of March, 1894, upon two tracts of land situated in Ritchie county, belonging to said William W. Harkness, described in the return of said sheriff.   On the 13th day of July, 1895, John W. Dudley, sheriff of Wood county, and as such administrator with the will annexed of Samuel Simes, deceased, filed a petition against the said First National Bank setting up title to or interest in the oil levied on under said attachment, and advertised to be sold by H. P. Camden and John F. Hutchinson, special commissioners, under attachment and order of sale against William W. Harkness, to which petition the First National Bank appeared by attorneys, and the petitioner filed bond in the penalty of two hundred dollars, conditioned as required by section 23 of chapter 106 of the Code of 1868, and the counsel agreed to the facts upon the matters arising on said petition and claim, and by agreement a jury was

waived, and the whole matter of law and facts submitted to the court.   The facts agreed were as follows:

"Upon petition of John W. Dudley, sheriff of Wood county, and as such administrator *de bonis non* with the will annexed of Samuel Simes, deceased, against the First National Bank of Parkersburg:   Be it remembered that upon the trial of the matters arising on the foregoing petition the facts in said cause were agreed upon between said petitioner and the First National Bank of Parkersburg, which agreement of facts was in writing, and is in the words and figures following:   The petitioner and the defendant, the First National Bank of Parkersburg, by their counsel of record in the above entitled cause, hereby waive a jury to try the matters in controversy presented by said petition, and agree that the whole matter of law and fact shall be submitted to a determination by the court in lieu of a jury, and said parties agree to the facts, as follows:   That some years ago, prior to 1886, William W. Harkness, a citizen of Pennsylvania, and resident of Philadelphia, became the owner of about one thousand and eight hundred barrels of crude petroleum oil, which he caused to be stored in an iron tank situated on a lot on Depot street in the city of Parkersburg, county of Wood, and state of West Virginia, which oil and tank and land belong to the said Harkness then and ever since.   Harkness gave the order hereinafter mentioned.   The said tank and the oil therein have ever since remained upon said lot, and the said Harkness has ever since resided in the city of Philadelphia, and has ever since continued to own said lot.   Some time after the said Harkness became the owner of said oil, and after he had caused it to be stored in said tank, the said Harkness kept and employed a watchman to guard said oil and tank, and said watchman lived in a house on the premises where the oil tank stands in which said oil was stored.   That about the year of 1886 C. S. Fewsmith came to Parkersburg to reside, and was employed by the said Harkness as agent to have a general oversight in and over the property of said Harkness and said oil and said tank for the purpose of preserving and protecting the same which the said Fewsmith did, as the agent of said Harkness, from about the year of 1886

up to the 23d day of May, 1888, when he accepted the order, hereinafter mentioned, and thereafter said oil was held as shown by the facts herein admitted; and on and after the date of the acceptance of said order dated May 22, 1888, the trustees of the estate of Samuel Simes, deceased, relied upon said C. S. Fewsmith, holding said oil and tank, as their agent under said accepted order, and have never been notified at any time since then by said Fewsmith, Harkness, or any one else that said possession was held by any one but for said trustees and said estate of said Simes, deceased; but of this order, and their reliance as aforesaid on it and Fewsmith, they gave no notice to said bank or otherwise; and it is not agreed by said bank that said Fewsmith was at any time the agent of said trustees and estate of Simes, but the court will determine whether said Fewsmith was the agent of said trustees and said estate, or of said Harkness, from the facts and circumstances herein stated. Since the lien of said attachment, the possession of the same said oil, *etc.*, has been in John W. Dudley, sheriff of Wood county, under and by virtue of the levy of said attachment in favor of the defendant against the property of W. W. Harkness. From and after said date of said order the said Fewsmith had general watch and supervision over said oil. His expenses and the expenses of the watchman residing upon the premises where said tank stands, and who had immediate control and charge of said oil for Harkness, for the purpose of guarding the same against accident or injury, had and have been paid by William W. Harkness. That during the time said Fewsmith had charge of said tank of oil he resided in the city of Parkersburg, in another part thereof, and away from the lot of land and premises where said oil tank stands, and exercised no other acts of control or possession of said oil except to look after it as stated. That said Fewsmith caused said oil to be insured in the name of said Harkness, and kept it insured, paying the premiums thereon in the name of said Harkness during the time of said insurance, up to within the last year or two; and the taxes on said oil were paid by said Harkness through said Fewsmith, and in the name of said Harkness. It is further agreed that on the 22d day of May, 1888, the

said Harkness, then being in Philadelphia, gave the order addressed to the said Fewsmith, a copy of which is filed as an exhibit with the petition in this case, which order the said Fewsmith accepted, as shown on the face of said order; that after the date of said order and the date of the acceptance thereof said trustees and estate of Samuel Simes, deceased, relied on said Fewsmith as the agent of the trustees of the estate of Samuel Simes, and that they have so continued to rely on C. S. Fewsmith as their agent up to the date —, for the purpose set forth in said order aforesaid, dated May 22, 1888; but of these claims and said order said bank had no notice, and if said Fewsmith, in managing and controlling said oil, has acted otherwise than as agent of the trustees of the estate of Samuel Simes, except to pay the taxes thereon and insure the same, such dealings had been without any notice thereof to the trustees of the estate of Samuel Simes, deceased, and said bank had no notice of the reliance of said trustees on the claim that Fewsmith was their agent; that the said oil has remained in the same tank, in the same place, on the same lot of said Harkness, precisely as it was at the date of said order of May 22, 1888, under which the petitioner claims in this suit, and since that date no change has been made whatever in the place of storage of said oil, but that the said oil and said tank have there remained and continued down to and including the time of issue of said attachment. It is further agreed that no notice was given of the execution of said order or the acceptance of the same to the public, or to said First National Bank, but that the said Harkness obtained credit, by virtue of the claim of ownership by him of said oil and tank and lot on which it stands, from said First National Bank; and the said Fewsmith and the said Harkness have claimed and represented to the said bank at various times that the said Harkness owned said oil, and the loan made at the First National Bank to the said Harkness, upon which the said suit and attachments in its favor against him was instituted and sued out, was made to him, the said Harkness, upon the representations made by his agent, Crowell S. Fewsmith, that the said Harkness was the owner of said oil and of other property in the state of

West Virginia, and in the city of Philadelphia, but it does not appear that any of these facts were disclosed to the estate of Samuel Simes, deceased, or to its trustees or personal representative. It is further agreed that on the 29th day of March, 1894, the First National Bank of Parkersburg instituted an action at law in the circuit court of Wood county, West Virginia, against said Harkness to recover the sum of six thousand dollars due upon the note of said Harkness, the said bank executing an attachment bond as required by law, whereupon the sheriff of said county, John W. Dudley, by his deputies, levied upon and attached said oil and said tank, and took possession thereof under said attachment, as required by order of attachment in said suit, and since that time the said sheriff has had possession of said oil and tank by virtue of said order of attachment, and not otherwise; that afterwards, in said suit of the said bank against said Harkness, a personal judgment was rendered upon process personally served upon said Harkness, and an order of sale entered therein, directing the sale of said oil and tank and real estate attached to pay said debt of six thousand dollars, with interest and costs; and other banks also sued out attachments and levied upon the property of said Harkness; but of the pendency of said action and of the proceedings therein, including the issuing out of said attachment and of the levy of the same on said tank and oil, the estate of Samuel Simes, nor its trustees nor its personal representatives, had any notice until long after the same had taken place, and not until recently. It is agreed that the papers, affidavits, bonds, orders of attachment, and returns in said suit of the First National Bank of Parkersburg against said Harkness shall be made and considered as parts of this agreement of facts. It is further agreed as a fact that after the said attachment was levied in favor of the First National Bank of Parkersburg, to wit, on the 30th day of April, 1894, the said Harkness, who had accepted service of the summons in the action of the First National Bank of Parkersburg against him, made the memorandum in writing, marked 'Ex. 3,' with the petition in this case, in which he acknowledges the debt of seven thousand five hundred dollars, due under the note of May

28, 1888, and that said Exhibits Nos. 1, 2, and 3, with the petition in this case, it is admitted, were executed under the circumstances and for the purpose and at the times more fully stated therein. And it is further agreed that the said order of May 22, 1888—Exhibit No. 2—filed with said petition, has never been recorded in the office of the county clerk of Wood county, West Virginia, at any time. And it is further agreed that John F. Hutchinson and H. P. Camden, special commissioners, have advertised said tank and oil for sale under and by virtue of an order made in the action in favor of the defendant the First National Bank of Parkersburg, in which said attachment was issued and levied, and that said sale has been adjourned and continued until July 13, 1895, by H. P. Camden and John F. Hutchinson, special commissioners, and that said special commissioners have advertised for sale July 23, 1895, certain real estate in Wood county, and on August 2, 1895, certain real estate in Ritchie county, for the purpose of realizing proceeds with which to pay said judgment of the First National Bank and other judgments amounting to about twelve thousand dollars, against said Harkness. It is agreed to submit the whole matter of law and fact to the court for such judgment as he may render, reserving to either party the right to review such judgment by writ of error or otherwise. Witness our hands this 13th day of July, 1895. First National Bank, by Hutchinson, Hutchinson & Camden. John W. Dudley, Adm'r de bonis non with the will annexed of Samuel Simes, deceased, by Vandervort & Moats, his Att'ys. And the matters of law and fact, a jury having been waived, were submitted to the court; and the court, after maturely considering the petition and the claim of the said petitioner, dismissed the said petition, and ordered that the First National Bank recover its costs against said petitioner, etc.; and thereupon said petitioner moved the court to set aside said judgment, and grant him a new trial, because said judgment was contrary to the law and the evidence and the facts agreed as aforesaid, which motion, being considered by the court, was overruled; to which opinion and judgment of the court in overruling said motion said petitioner excepts, and prays

that this bill of exception No. 1 may be signed and made part of the record in said cause, which is accordingly done. A. I. Boreman. [Seal.]"

From this judgment John W. Dudley, administrator with the will annexed of Samuel Simes, deceased, obtained this writ of error, and relies upon the following assignment of error: *First*, that the court erred in its judgment dismissing said petition; *second*, in refusing to set aside said judgment and grant a new trial to plaintiff in error.

The controversy in this case is in regard to the oil in an iron tank described as being of the capacity of about three thousand barrels, amounting to about one thousand eight hundred barrels of crude oil in said tank, described in the levy indorsed on said order of attachment. The defendant in error claims said property by virtue of the levy of said attachment thereon, while the plaintiff in error, as administrator *de bonis non* with the will annexed of Samuel Simes, claims it as having been pledged by William W. Harkness to Peter C. Hollis and Joseph L. Richards, trustees of the estate, of Samuel Simes, deceased, to secure the payment of seven thousand five hundred dollars. It appears from the agreement of facts which is made part of the record that prior to the year 1886 the defendant, William W. Harkness, became the owner of about one thousand eight hundred barrels of crude petroleum oil, which he caused to be stored in an iron tank situate on a lot on Depot street in the city of Parkersburg, Wood county, W. Va., which lot and oil tank then belonged to said Harkness, and have ever since belonged to him. After said Harkness had caused said oil to be stored in said tank, he employed a watchman to guard said oil tank, who lived in a house on the lot where the oil tank stands in which the oil was stored. About the year 1886 one C. S. Fewsmith came to Parkersburg to reside, and was employed by said Harkness as agent to have a general oversight over the property of said Harkness, and said tank and the oil stored therein, for the purpose of preserving and protecting the same, which said Fewsmith did as the agent of said Harkness from the year 1886 until the 23d day of May, 1888, when he accepted an order from

said William W. Harkness, which reads as follows: "Phila-delphia, Pa., May 22, 1888. Mr. C. S. Fewsmith, Parkers-burg, W. Va.: Will please hold to the order of Peter C. Hollis and J. L. Richards, trustees of the estate of Samuel Simes, deceased, my stock of lubricating oil stored in my oil tank in Parkersburg, W. Va., as collateral security for the return of seven thousand five hundred dollars, borrow-ed and received of them, and oblige, truly [Signed] Wm. W. Harkness"—which order was accepted by said C. S. Fewsmith in the following words: "Accepted. Parkers-burg, W. Va., May 23rd, 1888. [Signed] Crowell S. Few-smith."

What was the legal effect of this order and acceptance? We can regard it in no other light than that of a pledge of the oil in this tank as collateral ¦security for the payment of the sum of seven thousand five hundred dollars, mention-ed in said order, to said trustees of the estate of Samuel Simes, deceased. Jones, in his valuable work on Pledges (section 1) says: "A pledge may be defined to be a deposit of personal property as security, with an implied power of sale upon default. Lord Holt, who was the first to make a systematic statement of the general law of bailment, de-fined a pawn to be that sort of bailment 'when goods or chattels are delivered to another to be a security to him for money borrowed of him by the bailor.' Sir William Jones defined it to be 'A bailment of goods by a debtor to his creditor, to be kept by him till his debt is discharged.' The definition given it by Judge Story is 'a bailment of personal property as a security for some debt or engage-ment.' " In order that a pledge of personal property may be effectual, it is necessary that the possession of the prop-erty is given to the pledgee. So in the case of *Williams* v. *Gillespie*, 30 W. Va. 586 (5 S. E. 210) fourth point of sylla-bus, this Court held that an agreement to pledge personal property for the security of a debt is ineffectual to create a pledge of or lien on the property unless the property is put in the possession of the pledgee. Now, in order to deter-mine whether that was done in this instance, we must first consider the character of the property. The tank is an immense iron tub sitting on top of the ground, in this in-

stance having the capacity of three thousand barrels, and containing one thousand eight hundred barrels of crude petroleum. This tank was and is located upon a lot belonging to said William W. Harkness, in the city of Parkersburg. At the time said order was given, said tank and oil were in the possession of C. S. Fewsmith as the agent of said W. W. Harkness, who had given him special control and supervision of this tank and the oil it contained. The tank was so immense, and the quantity of oil it contained so great, that actual possession could not be delivered to said trustees; but when we look at the face of the order it is perceived that said William W. Harkness thereby requests his agent, C. S. Fewsmith, to hold, subject to the order of Peter C. Hollis and Joseph L. Richards, trustees of the estate of Samuel Simes, deceased, his stock of lubricating oil stored in his iron tank in his yard at Parkersburg, W. Va., as collateral security for the return of seven thousand five hundred dollars borrowed and received of them. By this order he requests C. S. Fewsmith to become the agent of said trustees in holding the possession and caring for said property, and C. S. Fewsmith, by accepting said order, thereby agreed to become the agent of said trustees, and hold the property as requested, for them. Can we regard this transaction, taken as a whole, in any other light than that of a pledge? Previous to this order, the possession of this one thousand eight hundred barrels of oil was held by C. S. Fewsmith as the agent of William W. Harkness, and by the order or request and its acceptance was transferred to said Fewsmith, as the agent of the trustees of Samuel Simes, deceased, and as security for said sum of seven thousand five hundred dollars. Jones, Pledges, § 1, says: "Every contract by which the possession of personal property is transferred as security only is to be deemed a pledge. In Georgia a pledge or pawn is declared to be property deposited with another as security for the payment of a debt." And that, as it seems to us, was done in this case. It appears in the agreed statement of facts that subsequent to this transfer said W. W. Harkness paid the taxes and insurance on this oil, but such payments

were not inconsistent with the fact that the property had been pledged for the payment of the seven thousand and five hundred dollars he had borrowed from the estate of Samuel Simes. He had not sold the property to any person, but had merely pledged it, and it was incumbent on him to pay the taxes to prevent a sale of the property, and it was consistent with prudence that he should insure the property in order to prevent loss to himself, and to avoid the destruction of the security to the Simes estate for the money he had borrowed. The distinction between a pledge and a mortgage is stated in Jones, Chat. Mort. § 4, as follows: "The chief distinction between a mortgage and a pledge is that by a mortgage the general title is transferred to the mortgagee, subject to be revested by the performance of the condition; while by a pledge the pledgor retains the general title in himself, and parts with the possession for a special purpose." And the same author in his work on Pledges (section 7) says: "A pledge differs from a mortgage of personal property in being a lien upon property, and not a legal title to it. The legal title to the property pledged remains in the pledgor, while a mortgage passes the legal title of the property itself to the mortgagee, subject to be revested in the mortgagor upon the performance by him of an express condition subsequent." The legal title to the property did not pass in this instance; the possession, however, went from Fewsmith, agent of Harkness, to Fewsmith, agent of the trustees of Samuel Simes' estate. As to the manner in which possession may be held by the pledgee, Jones on Pledges (section 4) says: "But possession may be held by a third person for the pledgee, when such person will be considered as the pledgee's agent." So in the case of Brown v. Warren, 43 N. H. 430, it was held that, "where property is pledged as security for a debt or liability, it is immaterial whether the pledgee holds the property or a third person holds the property for him." "If property of A. be held by B. and C. jointly, A. may assign the same in pledge to B. or C. severally, and the pledge will be good if both B. and C. have knowledge of the same, and assent to hold the property for the pledgee."

It is claimed by counsel for the defendant in error that

there was no possession accompanying the pledge, and for that reason it was inoperative. The question is as to the possession of the property at the time the pledge is claimed to have been made. It appears that after said C. S. Fewsmith came to Parkersburg, in 1886, he was employed by said Harkness as agent to have a general oversight in and over the property of said Harkness and said oil and said tank for the purpose of preserving and protecting the same, which said Fewsmith did, as agent of said Harkness, up to the 23d day of May, 1888, when he accepted said order. Said oil, on account of its character, was not susceptible of being transferred from hand to hand, and all possession that could be taken was a general supervision and control, guarding it from danger of fire, paying taxes and insurance, which Fewsmith was doing at the time of the acceptance of said order. Upon this question of delivery of possession, Jones on Pledges (section 36) says: "A symbolical delivery is sufficient wherever such a delivery would be sufficient in case of a sale of the same property. Such a delivery may be made of all property incapable of manual delivery. Thus logs in a boom may be effectually pledged by going in sight of them, and pointing them out to the pledgee." *Jewett* v. *Warren*, 12 Mass. 300; *Nevan* v. *Roup*, 8 Iowa, 207; *Whitney* v. *Tibbits*, 17 Wis. 359. In the case of *Nevan* v. *Roup* it is held that "delivery and possession is essential to a pledge, but the delivery may be symbolical, and the possession according to the nature of the thing." In the case of *Whitney* v. *Tibbits, supra*, it was held that: "Where the question was whether, on a pledge of flour stored in a warehouse in Milwaukee, a delivery by the pledgor of the warehouse receipt without indorsement constituted a sufficient delivery of the property to sustain the pledge as against subsequent attaching creditors of the pledgor, and it appeared that said receipt did not run to bearer, but stated that the flour was 'deliverable only on return of the receipt,' *etc.*, held, that the plaintiff was entitled to show that by a general custom in Milwaukee flour in store was transferred by a delivery of such receipts without indorsement." In the case we are considering, however, there was an acceptance of the order by Fewsmith in accordance with the

terms of the order, and Jones on Pledges (section 37) says: "A delivery of a document of title which serves to put the pledgee in possession is equivalent to an actual delivery of them." In section 229 the same author says: "The delivery of a bill of lading is a symbolical delivery of the property represented by it. The person who takes a bill of lading for a valuable consideration, whether this arises at the time or rests upon a previously existing debt, has the right to the property without taking actual possession of it, or doing any further act to perfect this title." See *Neill* v. *Produce Co.*, 41 W. Va. 37 (23 S. E. 702). So it is said: "Warehouse receipts, by custom, have long been considered as representing the property mentioned in them; and the assignment or indorsement of such instruments has long been regarded as equivalent to the delivery of such property." See Jones, Pledges, § 280. As we regard this transaction, the possession of Fewsmith before said written order was drawn on him and accepted was the possession of Harkness; by such acceptance he agreed to become the agent of said trustees in holding the possession of the oil and controlling the same, and did so become; and in this manner the possession was transferred from Harkness to said trustees, Harkness holding the possession by his agent "*facit per alium facit per se,*" transferred to Fewsmith as the agent of these trustees, and they held it, as did Harkness, through their agent. "Though a pledge be evidenced by a writing, it need not be recorded if the writing constitute a pledge, and not a mortgage." Jones, Pledges, § 6.

The case under consideration by its record presents a contest between the defendant in error, the First National Bank, claiming the oil stored in this tank under an attachment levied thereon subsequent to the date of said written request signed by W. W. Harkness, and directed to said C. S. Fewsmith, and accepted by him; and the question is, what right to said oil remained in W. W. Harkness at the time said attachment was levied, after pledging said property to the trustees of Samuel Simes, deceased? What right could said W. W. Harkness assert in any court to repossess himself of said one thousand eight hundred barrels of oil without paying said sum of seven thousand five hun-

dred dollars, for which it was pledged? He certainly could maintain no such claim successfully, and the question is, if said Harkness had no right to said oil superior to said pledgee's, could the defendant in error, under its attachment lien, have or take more than Harkness had at the time of the levy? We find the law upon this question stated by Shinn, Attachm. p. 611, § 318, who thus states the law: "A creditor can not, by attachment, acquire any higher or better right in the property attached than the debtor himself had at the time of the levy of the attachment, unless he can show that there has been fraud or collusion to his detriment." The lien obtained by attachment is subject to all previous liens by *bona fide* creditors; therefore the effect of the attachment is to subject only the interest which the defendant has in the property at the time of its seizure, and, having reached the conclusion that the oil in said tank was pledged to the payment of said sum of seven thousand five hundred dollars, with its accrued interest, we hold that said attachment is subject to said pledge, and can only be satisfied out of the surplus remaining from the sale of said oil after the satisfaction of the said sum of seven thousand five hundred dollars with its accrued interest; and the judgment of the court below dismissing the petition filed by the plaintiff in error is reversed, the judgment is reversed so far as it gives said attachment lien priority over said pledge as to the oil levied on thereunder, and the case is remanded, with costs to the plaintiff in error.

BRANNON, JUDGE, absent.