518 S.E.2d 859

STATE of West Virginia ex rel. Darrell V. McGRAW, Jr., Attorney General, Plaintiff/Petitioner Below, Appellee,

v.

PAWN AMERICA, a West Virginia business, Defendant/Respondent Below, Appellant.

State of West Virginia ex rel. Darrell V. McGraw, Jr., Attorney General, Plaintiff/Petitioner Below, Appellee,

v.

Pawn America, a West Virginia business, Lisa Funk, individually, and Brent Jackson, individually, Defendants/Respondents Below,

Pawn America, a West Virginia business, Defendant/Respondent Below, Appellant.

No. 24632.

Supreme Court of Appeals of West Virginia.

Submitted May 6, 1998.

Decided July 17, 1998.

Richard G. Gay, Berkeley Springs, West Virginia, and Franklin D. Cleckley, Morgantown, West Virginia, Attorneys for Appellant.

Jill L. Miles, Deputy Attorney General, Charli Cooper Fulton, Assistant Attorney General, Charleston, West Virginia, Attorneys for Appellee.

Timothy C. Winslow, Charleston, West Virginia, Attorney for Amicus Curiae West Virginia Division of Banking.

Deborah M. Zuckerman, Washington, D.C., Attorney for Amicus Curiae American Association of Retired Persons.

McCUSKEY, Justice:

This matter is before this Court upon the March 28, 1997, final order of the Circuit Court of Berkeley County. Pursuant to that order, the circuit court ordered that the ap-

pellant, Pawn America, produce certain documents described in a subpoena *duces tecum* issued by the Consumer Protection Division of the West Virginia Attorney General's office in connection with its investigation of the appellant's business practices. The central issue on appeal is whether the appellee, Darrell V. McGraw, Jr., Attorney General, has the authority to investigate Pawn America to determine whether it has engaged in acts which violate the West Virginia Consumer Credit and Protection Act, *W.Va.Code* § 46A–1–101, *et seq.* (1974). The appellant requests that this Court declare that the Attorney General has been acting outside of his delegated authority and, further, that we prohibit enforcement of the investigatory subpoena issued to Pawn America. We conclude that the Attorney General has the statutory power under the Act to conduct the investigation which his office has commenced. We also find that the lower court did not err with respect to its rulings on the enforceability of the subpoena. Accordingly, we affirm the decision of the circuit court.

## I.

## FACTS

Pawn America is an unincorporated sole proprietorship which is located in Martinsburg, West Virginia. At all times relevant to this case, Pawn America has held a pawnbroker's license issued by the City of Martinsburg under its "Secondhand Dealers" ordinance. The State of West Virginia has not undertaken to license pawnbrokers, and, consequently, Pawn America holds no state-issued pawnbroker's license.

The Attorney General's investigation of Pawn America was prompted by a consumer complaint lodged with the Consumer Protection Division. Based upon the consumer's claims regarding his dealings with Pawn America, as well as the testimony of other Pawn America customers, the Attorney General began an investigation to determine whether Pawn America's business practices violated the West Virginia Consumer Credit and Protection Act, *W.Va.Code* § 46A–1–101, *et seq.* (1974). The particular transaction attested to by consumers, termed a "title

pawn," was described by the circuit court in its final order as follows:

A consumer approaches Pawn America with the intent to borrow money; in exchange for the money being lent, the consumer is required to deliver to Pawn America a clear certificate of title to his/her motor vehicle and to endorse the title in blank; the consumer is required to pay a fee of 25% of the loan amount for a two week loan (which translates into an interest rate of 65% when annualized); that the loan may be renewed for additional two-week periods so long as the consumer pays an additional 25% "finance charge" for each such two-week period; that the consumer is permitted to retain possession of the vehicle unless, and until, he/she defaults on a payment; and Pawn America does not store the motor vehicle on which it loans money at its Martinsburg location, rather if the consumer does not pay the amounts owed to Pawn America in a timely fashion, then Pawn America "repossesses" the consumer's vehicle.

On December 9, 1996, the Attorney General issued a subpoena *duces tecum*, seeking business records from Pawn America. The subpoena was served upon Pawn America the next day. Pawn America refused to produce the requested documents without a court order. Therefore, on February 5, 1997, the Attorney General filed a petition for enforcement of the subpoena in the circuit court.

On March 10, 1997, the circuit court held a hearing on the Attorney General's petition, and on March 28, 1997, the circuit judge issued a final order enforcing several of the subpoena demands and quashing others. On April 8, 1997, the circuit court entered an order which stayed its final order pending the outcome of this appeal.

## II.

## STANDARD OF REVIEW

"Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va.

138, 459 S.E.2d 415 (1995). This appeal presents both a question of law and involves statutory interpretation. Accordingly, we apply a *de novo* standard of review.

## III.

## DISCUSSION

■ The central issue before this Court is whether the Attorney General has the statutory power to investigate Pawn America for suspected violations of the West Virginia Consumer Credit and Protection Act, *W.Va. Code* § 46A–1–101, *et seq.* In order to resolve this question, we must first determine a threshold issue: whether Pawn America's alleged "title pawn" transactions fall within the exclusion from the Act for "licensed pawnbrokers."

■ *West Virginia Code* § 46A–1–105 (1996) states: "This chapter does not apply to: ... (4) Licensed pawnbrokers." Pawn America contends that this provision gives licensed pawnbrokers a blanket exemption from the Act's coverage and that the circuit court erroneously disregarded this exemption in enforcing the Attorney General's investigatory subpoena. We disagree. For reasons set forth below, we conclude that the Act's exemption does not preclude the investigation of acts which are not true pawns and are beyond the scope of a pawnbroker's license.

As indicated earlier, Pawn America holds a pawnbroker's license issued by the City of Martinsburg. This license allows Pawn America to receive and sell "secondhand personal property." Under the Martinsburg "Secondhand Dealers" ordinance, which regulates pawnbrokering in that city, there is a specific exemption for "[p]ersonal property which is subject to and has been issued a title under the provisions of the laws of the State of West Virginia or any other State." In addition, another provision of the ordinance mandates that "[a]ll secondhand personal property obtained by a purchaser shall be stored at the business location in Martinsburg, West Virginia, where it was purchased...." *West Virginia Code* § 17A–3–2 (1992) requires, generally, that all motor vehicles and recreational vehicles which are driven or moved upon a highway must be titled by the West Virginia Department of Motor Vehicles. Given that Pawn America was apparently lending money in exchange for the titles of motor vehicles and failing to store these vehicles at its Martinsburg business location, its "title pawn" activity was in violation of the Martinsburg "Secondhand Dealers" ordinance which regulates pawnbrokers. Because such activity was entirely outside of the scope of Pawn America's license from the City of Martinsburg, and, thus, *ultra vires*, the exemption under the Consumer Credit and Protection Act for a "licensed pawnbroker" is not applicable to the "title pawn" transactions in which Pawn America allegedly engaged.

The only West Virginia case relied upon by Pawn America is *First National Bank v. Harkness*, 42 W.Va. 156, 24 S.E. 548 (1896). This century old case dealt with the pledge of 1800 barrels of crude oil. The transaction at issue was a commercial one, involving neither a consumer loan nor a pawnbroker. In view of these distinctions, *Harkness* is not determinative, or even persuasive, in a statutory consumer protection case, such as this, where entirely different principles of remedial statutory construction and application apply. Furthermore, what *Harkness* stands for, at best, is that at common law, if actual delivery in a commercial pledge were not practicable due to the nature of the goods, then symbolic delivery would suffice. The critical difference in this case is that automobiles are susceptible to actual delivery to the lender or pledgee, *i.e.*, Pawn America.

In *Commonwealth v. Car Pawn of Virginia, Inc.*, 37 Va.Cir. 412 (1995), the Virginia Court applied a substantially similar statute to the same facts as in the instant case and concluded that the Legislature did not exempt "title pawns" from consumer loan regulation when it set forth a "pawnbroker" exemption to the state's consumer protection laws. The court in *Car Pawn* insightfully found that

Car Pawn is essentially an unlicensed finance business which violates ... the Consumer Finance Act. Notwithstanding that Car Pawn attempts to receive pawns of automobiles, the business does not actually

retain the pawned vehicles in most cases. Moreover, if redemption does not occur within the stated period, the customer may continually renew the pawn indefinitely. In form, this transaction mimics a pawn; at heart it is simply a small loan ... with an excessive interest rate.

*Id.* at 416.

Moreover, given West Virginia's comprehensive remedial scheme for the regulation of consumer lending, this Court believes it would be absurd to suppose that in enacting a "licensed pawnbroker" exemption to the Consumer Credit and Protection Act, our Legislature intended to allow a consumer loan company, like Pawn America, to go entirely unregulated with respect to every aspect of a loan when the transaction is a "pawn" in name only, and in reality a consumer loan with an usurious interest rate—not a true pawn.

Accordingly, under the circumstances of this case, we hold that pursuant to *W.Va. Code* § 46A–1–105 (1996), licensed pawnbrokers are excluded from the coverage of the West Virginia Consumer Credit and Protection Act insofar as they engage in true pawn transactions that are within the scope of a valid pawnbroker's license. However, this exclusion is not applicable to activities which are not true pawns and are beyond the scope of such license and, thus, *ultra vires.*

Since we find that the "title pawn" activity, which is the subject of the Attorney General's investigation, is covered by the Consumer Credit and Protection Act, we now turn to consider whether the circuit court nonetheless erred in requiring the production of certain documents sought by the investigatory subpoena and quashing the subpoena as to the rest.

The circuit judge ordered production of the documents demanded in paragraphs 1, 4, 6, 7, 8 and 11 of the Attorney General's subpoena under the "required records" doctrine, notwithstanding Pawn America's assertion of the Fifth Amendment privilege against self-incrimination. The Fifth Amendment of the United States Constitution provides that "[n]o person ... shall be compelled in any criminal case to be a witness against himself...." In proper circum-

stances, the owner of a sole proprietorship can successfully invoke this privilege. *Bellis v. United States,* 417 U.S. 85, 87–88, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974). However, in *Shapiro v. United States,* 335 U.S. 1, 68 S.Ct. 1375, 92 L.Ed. 1787 (1948), the United States Supreme Court held that the privilege against self-incrimination "cannot be maintained in relation to 'records required by law to be kept in order that there may be suitable information of transactions which are the appropriate subjects of governmental regulation, and the enforcement of restrictions validly established.'" *Id.* at 32–33, 68 S.Ct. 1375. In *Grosso v. United States,* 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968), the Supreme Court articulated the following requisites for application of the "required records" doctrine: (1) the purposes of the governmental inquiry must be essentially regulatory; (2) information is to be obtained by requiring the preservation of records of a kind which the regulated party has customarily kept; and (3) the records themselves must have assumed "public aspects" which render them at least analogous to public documents. *Id.* at 67–68, 88 S.Ct. 709. The doctrine has been held to apply specifically to sole proprietors, such as Pawn America. *In re Grand Jury Subpoena,* 21 F.3d 226 (8th Cir.1994). We find that all three factors set forth in *Grosso* are present in this case with respect to the documents which Pawn America was ordered to produce. Thus, we find no error in the circuit court's determination that Pawn America's assertion of the Fifth Amendment privilege was foreclosed as to those documents.

The Attorney General asserts, as a cross assignment of error, that the lower court erred in quashing the subpoena as to the records demanded in paragraphs 2, 3, 5, 9, 10, 12, 13, 14 and 15 thereof. Under the particular facts of this case, we find no error in this ruling, which the circuit court prefaced upon its finding that the documents' production was foreclosed by the asserted Fifth Amendment privilege. Once the privilege is asserted, "[i]t is the duty of a court to determine the legitimacy of a witness' reliance upon the Fifth Amendment." *Roberts v. United States,* 445 U.S. 552, 560 n. 7, 100

S.Ct. 1358, 63 L.Ed.2d 622 (1980). "[I]f the witness, upon interposing his claim, were required to prove the hazard in the sense in which a claim is usually required to be established in court, he would be compelled to surrender the very protection which the privilege is designed to guarantee." *Hoffman v. United States,* 341 U.S. 479, 486, 71 S.Ct. 814, 95 L.Ed. 1118 (1951). Moreover, in considering the propriety of a trial court's ruling permitting a witness to invoke the Fifth Amendment, this Court is mindful that "[t]he trial judge in appraising the claim 'must be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence.'" *Id.* at 487, 71 S.Ct. 814.

## IV.

## CONCLUSION

Upon all of the foregoing, the decision of the circuit court is affirmed.

Affirmed.