## THE CITY OF CHICAGO

*v.*

## THOMAS H. HULBERT.

*Filed at Ottawa November 13, 1886.*

1. PAWN-BROKERS—*powers of municipalities in respect to them.* Cities incorporated under the general law have the power to license, tax, regulate, etc., hawkers, peddlers and pawn-brokers, but they have no power whatever to determine who is or may be a pawn-broker.

2. SAME—*what constitutes a pawn-broker.* A pawn-broker in this State is one engaged in the business of receiving personal property in pledge, or as a security for money or other thing advanced to the pawner or pledger.

3. Two important elements are necessary to constitute a pawn-broker: First, he must be engaged in the business of taking property in pledge for money advanced,—an occasional loan will not do, but he must so engage in the occupation that it may be known as his regular business; and second, he must be engaged in receiving property in pledge for money, etc., advanced or loaned.

4. A person in an incorporated city may loan money of his own, or of others on commission, and take as security a mortgage on real or personal property, or stocks, notes, or warehouse receipts, without becoming a pawn-broker.

5. SAME—*the word "property," as used in the statute concerning pawn-brokers—defined.* The word "property," in the statute defining a pawn-broker, does not include real estate, but is intended to embrace only such articles of personal property as may be actually delivered over to the possession and custody of another as a security, and not stocks, bonds, notes or mortgages, or choses in action.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Criminal Court of Cook county; the Hon. GWYNN GARNETT, Judge, presiding.

Mr. GEORGE MILLS ROGERS, for the appellant.

Mr. C. FRANK WHITE, for the appellee.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

The city of Chicago has in force an ordinance, two sections of which are as follows:

"Sec. 1704. The mayor may, from time to time, grant licenses to such persons as shall produce to him satisfactory evidence of their good character, to exercise or carry on the business of a pawn-broker, or of a loan-broker or keeper of a loan office; and no person shall exercise or carry on the business of a pawn-broker, loan-broker, or a keeper of a loan office, without being duly licensed, under a penalty of $100 for each day he or she shall exercise or carry on said business without such license.

"Sec. 1705. Any person who loans money on deposit or pledge of personal property, or who deals in the purchase of personal property, on condition of selling the same back again at stipulated price, or who makes a public display at his place of business of the sign generally used by pawn-brokers to denote their business, to-wit, 'three gilt or more or less yellow balls,' or who publicly exhibits a sign of 'money to loan on personal property, or deposit or pledge,' is hereby declared to be a pawn-broker."

Appellee, Thomas H. Hulbert, a resident of the city, a private banker, was, and still is, engaged in loaning money

(both his own, and that of others on commission,) on real estate and furniture, horses, wagons, machinery, warehouse receipts, etc., without removal from the possession of the owner, and also in loaning money on watches, diamonds and jewelry. Under the agreed statement of facts it appears that the method employed, where an advance is made on jewelry, or other valuables of a similar nature, is as follows: The borrower makes an application at the office of said Hulbert for a loan, offering, as security, a watch, (for example,) and he is directed to have some reliable jeweler place a valuation on the watch, and then, if it is deemed good security for the loan asked, he is requested to store it in some warehouse and get a warehouse receipt for it. On the borrower indorsing and turning over to said Thomas H. Hulbert this receipt, and executing his promissory note for the amount to be advanced, the loan is made.

Copies of the usual form of warehouse receipt, and of the promissory note used, are as follows, viz.:

"*Warehouse Receipt issued by the Illinois Fire-Proof Warehouse, 46, 48 and 50 North Morgan street, near Lake street.*

G. A. ROBINSON, Proprietor.

STORAGE FOR VALUABLES.

CHICAGO, Ill. . . . . . . . . . . 188—.

"Received in store for account of . . . . . . . . . . . . . . ., subject to . . . . . . . order thereon, and surrender of this receipt.

"Perishable goods and loss or damage by elements, heat, leakage, mice, rats, fire, moths and shrinkage, at owner's risk.

"Goods subject to sale unless charges are paid within six months from date.

"Storage per month . . . . . . . . . . . . . . . . $

"Insurance per month . . . . . . . . . . . . . . . $

"Advance charges . . . . . . . . . . . . . . . . . .

. . . . . . . . . . . . . . . . . . . . . . . .

"Total . . . . . . . . . . . . . . . . . . . . $

. . . . . . . . . . . . . . . . . . . . . . . .

"Per                    *Proprietor.*"

"$100.				CHICAGO, Ill. . . . . . . 188—.

" . . . . . . . 1886, after date, for value received, I promise to pay to the order of . . . . . . . . . . . . . . . . . . . dollars, at the office of Thomas H. Hulbert,. in Chicago, with interest at . . . . . . per cent per annum until paid, having deposited with them as collateral security . . . . . . . . . . . . ., which I hereby authorize and empower the said Thomas H. Hulbert, or his assigns, to sell on the maturity of ·note, or at any time thereafter, or before, said security being free from claim or incumbrance, and transferable by indorsement, with all its rights and privileges, at public or private sale, without giving notice, and to apply so much of the proceeds thereof to the payment of this note as may be necessary to pay the same, with all interest due thereon, and also to the payment of all expenses attending the sale of the said securities, including attorney's fees and commissions."

From the foregoing facts the question presented is, whether Hulbert is liable to the penalty imposed by section 1704, *supra*.

It appears from the stipulation found in the record, where the facts involved in the case have been agreed upon by the parties, that the defendant, Hulbert, is a private banker in the city of Chicago; that he loans money, for himself and others, on real estate and personal property security. We apprehend that a person may loan money in Chicago, and take, as security, a mortgage on real or personal property, without incurring any liability under the ordinances of the city, or without becoming a pawn-broker. This proposition is so obvious that no argument is needed in its support. But it is claimed that the defendant made loans and received personal property in pledge as security for the loan; that the warehouse receipts which were given to the defendant gave him the constructive possession of the property, and thus he may be regarded as one loaning on personal property actually placed in pledge,—in other words, that he may be regarded as

a pawn-broker. Whatever disagreement may exist in regard to a correct or accurate definition of a pawn-broker in other States, that matter has been placed at rest here by an act of the legislature. Section 1 of an act approved June 4, 1879, (1 Starr & Curtis, 1369,) provides, "that every person or company engaged in the business of receiving property in pledge, or as security for money or other thing advanced to the pawner or pledger, shall be held and is hereby defined to be a pawn-broker."

The common council of the city of Chicago, under section 63, chapter 24, (1 Starr & Curtis' Stat.) page 466, has the power to license, tax, regulate, etc., hawkers, peddlers and pawn-brokers, but it has no power whatever to determine who is or may be a pawn-broker. And the fact that the city council has declared, by section 1705 of an ordinance, that a person engaged in a certain business is a pawn-broker, does not make him such. In order to be a pawn-broker he must fall within the definition given in the statute. Under the section of the statute heretofore cited, two important elements are required to constitute a pawn-broker: First, the person must be engaged in the business of receiving property in pledge for money advanced. An occasional loan will not be sufficient, but the person must so engage in the occupation that it may be known as his regular business or occupation. Second, the person must be engaged in receiving property in pledge, or as security for money or other thing advanced to the pawner or pledger. What was intended by the legislature by the use of the word "property," in the act? Was it intended to embrace lands, personal chattels, bonds, notes, money and stocks, or was the intention to give the word a more restricted sense, and confine it to articles of personal property? That the latter was the object we think is apparent. Lands are property, but it is plain they were not intended to be embraced in the word "property," as used, because they are mortgaged almost daily as security for money loaned, and the person

taking such security has never been regarded as a pawn-broker. Bonds and stocks and promissory notes could not have been intended, because they are pledged as security for money loaned by the banks all over the country, almost daily, and it has never been understood that our bankers are pawn-brokers; and yet such might be the result if the term "property" was used in an enlarged sense, and intended to include every species of property. We think the legislature intended by the use of the word "property" to include only such articles of personal property as might be actually delivered over to the possession and custody of the person who advanced the money, and not stocks, bonds, notes or mortgages, or choses in action, or evidences of debt. Here no article of personal property was delivered to the defendant. He took into his possession no article of personal property whatever. The transaction was this: The defendant loaned a certain amount of money, for which he received a note payable at a certain time. To secure the note, the person who obtained the money gave as collateral security a warehouse receipt. If this trans-action constituted the defendant a pawn-broker, every banker in the State might be called a pawn-broker. All the banks, to a greater or less extent, make loans, and take as collateral, bonds, stocks, notes and mortgages, or warehouse receipts, and we think they have the right to do so without becoming pawn-brokers.

From what has been said, we think it is clear that the defendant was not liable to any penalty under the ordinances of the city,—that he can not be regarded a pawn-broker so long as he receives no personal property in pledge for a loan.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*