**In re ROGERS.**

No. 2487.

District Court, N. D. West Virginia.
Aug. 9, 1937.

James W. Ewing, Nelson C. Hubbard, and James Paull, Jr., all of Wheeling, W. Va., for Elizabeth R. Ewing.

S. M. Noyes and C. J. Smith, both of Wheeling, W. Va., for Van McColloch, executor.

Hall, Goodwin & Paul, of Wheeling, W. Va., for A. M. Vossler, administratrix, and Edward W. Vossler, committee.

· Russell G. Nesbitt and A. E. Bryant, both of Wheeling, W. Va., for W. J. Cotton, trustee.

BAKER, District Judge.

The memorandum of opinion and the order of the referee, Robert B. McDougle, and the arguments and briefs of counsel having been carefully read and considered by the court, and the court being of opinion that the findings of fact and conclusions of law, as reached by the referee, are correct, the court hereby adopts and appropriates the memorandum by the referee as the opinion of the court in the matters therein set out, which are in words and figures as follows:

"*Summary of the Petition.*

"There was filed on February 28, 1936, the petition of the trustee in bankruptcy from which it appears that on September 18, 1934, George J. Rogers was fiduciary of estates of the following decedents: James P. Rogers (his father), Fred Lange (his uncle by marriage), Margaret J. Lange (his aunt), and M. J. Rogers (his mother), and that George J. Rogers was also the manager of 'The Rogers Estate' or 'Rental Account.' As such fiduciary and manager he had certain stocks and securities in his hands. George J. Rogers, Elizabeth R. Ewing (his sister), and Ladora R. Waltz (another sister), now deceased, were the only heirs at law and distributees of said estates, and the only beneficiaries of 'The Rogers Estate,' and the owners in equal shares of all of said securities.

"The Agreement of September 18, 1934.

"On September 18, 1934, George J. Rogers, individually and fiduciary aforesaid, and as such manager, and Elizabeth R. Ewing, and Newton Waltz, executor of the will of Ladora Waltz, deceased, and Security Trust Company, entered into a written agreement, a copy of which was filed as Exhibit A with the petition, from which it appears that disputes and differences had arisen between said Rogers and said Waltz, executor, with reference to the estate property handled by said Rogers, requiring a full and complete accounting and distribution of the same. There was delivered to said Security Trust Company said stocks and securities and a promissory, negotiable note executed and delivered by said Rogers for the principal sum of $90,000 payable to said Security Trust Company, trustee, secured by a deed of trust on real estate.

"The pertinent paragraphs of said agreement, in so far as we are now concerned, are I, II and III, which follow:

" 'I. That George J. Rogers will deposit with the said Security Trust Company, as Trustee, simultaneous with the execution of this agreement, the certain negotiable promissory note signed by the said George J. Rogers for the principal sum of Ninety Thousand ($90,000.00) Dollars, secured by deed of trust and payable six (6) months from date to the order of the Security Trust Company, trustee, and that such note shall be so held, retained and managed by the said Security Trust Company, trustee, for the express purpose of protecting the said Ladora R. Waltz Estate and Elizabeth R. Ewing from any and all loss arising out of and in connection with the handling and managing of the aforesaid estates by the said George J. Rogers, and in that event, upon a final accounting before a Commissioner of Accounts of Ohio County, West Virginia, and a final adjudication of any appeal therefrom, the said George J. Rogers be found indebted to said estate in any sum of money, that the negotiable promissory note will then and there be promptly collected by the Security Trust Company, trustee, by promptly demanding payment thereof from the said George J. Rogers, and in the event of the non-payment of said note in full by him, by an immediate sale under and by virtue of the deed of trust given to secure the payment of said note and the proceeds of such collection so made by the Security Trust Company, trustee, shall be immediately paid over to the executor of the estate of the said Ladora R. Waltz, deceased, and Elizabeth R. Ewing in the ratio of such indebtedness of the said George J. Rogers to each of the said estate.

" 'II. That said Security Trust Company, trustee, shall immediately upon the findings of a Commissioner of Accounts of Ohio County, West Virginia, or final adjudication of any appeal therefrom, promptly act to collect the note aforesaid, either by payment in cash from the said George J. Rogers or by causing a sale of the real estate embraced within the aforementioned deed of trust, and in the meantime, hold, preserve and manage such note.

" 'III. That the said George J. Rogers will and does simultaneous with the execution of this agreement deposit with the said Security Trust Company, as trustee, certain stocks, securities and other property and effects, a list of which is to this agreement appended and signed by each of the respective parties hereto, which the said Security

Trust Company, trustee, hereby agrees to take, hold intact and to manage for the express purpose of protecting and saving harmless from loss or damage the estate of the said Ladora R. Waltz, deceased, and Elizabeth R. Ewing and to make a full and complete distribution thereof to the estate of the said Ladora R. Waltz, deceased, and Elizabeth R. Ewing in the proportion that the said George J. Rogers may be found indebted to such estates, on the basis that such securities shall be turned over to and delivered to the estate of the said Ladora R. Waltz, deceased, and Elizabeth R. Ewing in ratio to the indebtedness of the said George J. Rogers to the same, and that should a deficit arise, the said George J. Rogers shall immediately make payment in full of the same.'

"The petition further alleges that subsequently Elizabeth R. Ewing and Newton Waltz, executor, caused said trustee to turn over and deliver to each of them one-third of said stocks and securities, and that there now remains in the hands of the said Security Trust Company, as trustee, 'the said bankrupt's one-third of said stocks and securities.'

"In this bankruptcy proceeding Elizabeth R. Ewing and Newton Waltz, executor of the will of Ladora R. Waltz, deceased, as administrator of the estate of James P. Rogers, deceased, as executor of the will of Fred Lange, deceased, and as executor of the will of Margaret J. Lange, deceased, have filed their proofs of claim.

"The trustee in bankruptcy requested the Security Trust Company to deliver said securities to him, which request was refused. Therefore, the trustee in bankruptcy wants an order requiring said trust company to surrender said assets to him.

"The Security Trust Company's Answer.

"On March 16, 1936, the Security Trust Company's answer to said trustee's petition was filed. Substantially, said answer admitted the allegation of the petition, with the following exceptions: The trust company was not advised as to the respective ownership in said securities, and that it is not advised as to the ownership of the securities remaining in its hands. It is alleged that on January 22, 1936, in the suit of National Exchange Bank v. George J. Rogers et al., pending in the circuit court of Ohio county, said court sustained a demurrer to the amended bill of complaint in said suit, the effect of which was that said securities deposited under said agreement did not effect a preference and that said trust company was to continue to hold said securities under said agreement, and that the trustee in bankruptcy was made a party plaintiff in said suit.

"Elizabeth R. Ewing has made a demand upon the Security Trust Company to deliver to her one-half of said securities remaining with said trust company and the trustee in bankruptcy has made a demand upon said trust company for the delivery to him of all of said securities. Said Security Trust Company requests that, before an order is entered requiring it to surrender said securities to the trustee in bankruptcy, a hearing be had upon said petition and that all of the parties to said agreement of September 18, 1934, be given notice thereof.

"The Answer of Elizabeth R. Ewing.

"The answer of Elizabeth R. Ewing to said petition was filed on November 18, 1936. The third and fourth paragraphs of said answer assert:

"'III. That the said George J. Rogers pursuant to said agreement dated September 18, 1934, promptly delivered to Security Trust Company, as Trustee, various stocks, promissory notes and evidences of indebtedness, all of which were held by him in his said several fiduciary capacities and that at the time of said delivery the said George J. Rogers executed assignments of all said stocks; that Security Trust Company as Trustee under said agreement thereby acquired and still has legal title to, possession of and the right to control the aforesaid stocks, promissory notes and evidences of indebtedness in accordance with the express purpose and intent of said agreement; that even if it should be judicially determined that by the terms of said agreement, legal title to said intangible personal property did not pass to Security Trust Company as Trustee, nevertheless the delivery to and possession by Security Trust Company of said intangibles under the terms of said agreement constitutes a valid security for any debt of George J. Rogers as fiduciary of the said several estates owed to this respondent as a beneficiary thereof.

"'IV. That your respondent is a co-legatee and co-distributee with George J. Rogers in the several estates set out in paragraph I hereof and as such has a claim upon the securities set out in the petition of the trustee in bankruptcy herein, superior to the claim of said trustee in bankruptcy

thereto by reason of the so-called "right of retainer" or "equitable set-off"; that said George J. Rogers as such co-legatee and co-distributee is indebted to each of the several estates in large sums, the exact amounts of which are to your respondent unknown at this time but your respondent is advised and believes and therefore alleges the fact to be that George J. Rogers is indebted to each of the said estates in a sum far greater than his share of said estates as such co-legatee or co-distributee; that the present market value of the securities named in said petition of the trustee in bankruptcy is approximately $20,000.00; that the indebtedness of said George J. Rogers to said estates is in a sum far greater than $20,000.00 and that his indebtedness to each estate is far greater than the present market value of the securities belonging to or standing in the name of such estate.'

"The answer concludes with a prayer that the equitable and beneficial interest of Mrs. Ewing in said securities be recognized and protected and that the claim of the trustee for the possession of any of said securities may be denied.

### "The Answers of Newton Waltz.

"On March 17, 1936, were filed three separate answers of Newton Waltz: (1) As administrator of the estate of Margaret J. Lange; (2) as administrator of the estate of James P. Rogers; and (3) as administrator of the estate of Fred H. Lange. These answers are all similar and assert, 'That the said Security Trust Company is in no manner the owner of said property, holding the same as manager only, and that the real title to that part of the property listed in said petition and as herein listed is in your petitioner as administrator c. t. a. d. b. n. of the estate of Margaret J. Lange, as a part of the unadministered estate of the said Margaret J. Lange, deceased, and that all of the other matters and things therein pending relative to the disposition of said property are provided for by law, and that the said Security Trust Company, a corporation, merely holds the same for the ultimate benefit of your petitioner as administrator c. t. a. d. b. n. of the estate of Margaret J. Lange; that your petitioner has not abandoned said property by the filing of his claim herein, nor surrendered any right or title thereto; but that at the time of the filing of such claim, as well as at this time, the accounting pending before the Hon. George C. Beneke, Commissioner of Accounts of Ohio County, West Virginia, which proceeding was originated on the —————— day of June, 1934, and has been since pending and has not yet been completed and confirmed requiring to be filed by the said George J. Rogers his accounting as fiduciary of said estate; and that under the doctrine of retainer as applied to the administration of estates, your petitioner, as administrator c. t. a. d. b. n. of the estate of Margaret J. Lange, is entitled to have and receive from said Security Trust Company, Trustee, upon the completion and confirmation of the accounting of the said George J. Rogers, all of the property held by the said Security Trust Company as such Trustee and belonging to the estate of the said Margaret J. Lange.'

"And then is set up in each answer a claim to specific shares. Prayer is then made that the prayer in the petition of the trustee in bankruptcy may be denied.

### "The So-Called Escrow Agreement of April 15, 1935.

"There was filed in this proceeding on March 17, 1936, what has been called an escrow agreement, dated April 15, 1935, signed by George J. Rogers, Elizabeth R. Ewing, and Newton Waltz, as executor of the last will and testament of Ladora R. Waltz, deceased, George J. Rogers being named as the party of the first part, the said Waltz, executor, and the said Elizabeth R. Ewing being named as the parties of the second part, and said trust company being designated as the party of the third part, and which agreement recites that 'it is now desired to provide specifically for the transfer of such stocks as are found in Schedule A attached hereto and made a part hereof, as are due the parties of the first and second part of this agreement from various estates in which they are beneficiaries,' and 'The interest of George J. Rogers has been legally attached. * * *' So far as it is essential to this discussion the agreement between the parties is as follows:

" 'I. That the said Security Trust Company, a corporation, shall act as Escrow Agent and have transferred into its name, as such, the one-third of said stocks in incorporated companies, listed in Schedule A, as belonging to George J. Rogers, as well as any other stocks, notes, bonds and other forms of securities and indebtedness that shall come into and be made a part of this agreement. The said Security Trust Company shall hold, manage and treat same as a trust fund and distribute principal in com-

pliance with legal instructions after restraining order has been legally determined.

" 'II. This agreement shall act as full and complete authority to all incorporated companies, Courts of Record, for control of the transfer of title of personal property into the name of the said Security Trust Company, a corporation, as Escrow Agent and for the re-transfer of all stocks, of incorporated companies, bonds, notes, deposits in banks, and like securities, from the name of Security Trust Company, as Escrow Agent to the name of the person or persons lawfully entitled thereto, at such time as the same may be determined.

" 'III. This agreement shall also act and be the complete authority for all incorporated companies, Courts of Record, for control of the transfer of title of personal property, and all other persons having like authority to make transfer of the one-third of said stocks, bonds, notes and other securities into the name of Elizabeth R. Ewing, and one-third of said stocks, bonds, notes and other securities into the name of Newton Waltz, Executor of the Last Will and Testament of Ladora R. Waltz, deceased, as shown by such schedules hereto attached.'

"On November 30, 1936, was filed the special replication of the trustee in bankruptcy to said answer of Elizabeth R. Ewing. The so-called escrow agreement of April 15, 1935, was filed as Exhibit No. 1 with said replication.

"It is substantially agreed that said replication presents no questions of fact but rather constructions of the agreements of September 18, 1934, and of April 15, 1935, and the question of whether or not the so-called "Right of redemption" or "equitable set off" is applicable to the situation here existing.

"Application of the Law to the Facts Heretofore Shown to Exist in This Matter.

"No party has requested that any evidence be taken in support of any of the foregoing pleadings and the exhibits therewith, and it is agreed that this matter is submitted to the referee upon said pleadings and exhibits.

"With the foregoing analysis of the pleadings filed in this matter, above analyzed, and of the two agreements of September 18, 1934, and April 15, 1935, the referee will now proceed to apply the law as he sees it to this rather intricate situation.

"The Situation of the Parties Prior to the Execution of the Agreement of September 18, 1934.

"All of the stocks mentioned in said agreement of September 18, 1934, were originally the property of and belonged to the estates of James P. Rogers, Fred Lange, Margaret J. Lange or M. J. Rogers or to 'the Rogers estate,' which stocks George J. Rogers held as the fiduciary of the various estates. The heirs at law and distributees of the estate of the said James P. Rogers, Fred H. Lange, Margaret J. Lange, and M. J. Rogers all deceased, and the only beneficiaries of 'the Rogers Estate' were George J. Rogers, Elizabeth R. Ewing, and Ladora R. Waltz.

"Therefore, subject to the payment of the debts of the estates, there can be no question that Elizabeth R. Ewing and Ladora R. Waltz (or her personal representative) were each entitled to one-third thereof, before the execution of the agreement of September 18, 1934. On the other hand, likewise subject to the payment of the debts of the estates, there can be no question that George J. Rogers was then entitled to one-third of such stocks subject further, as to his interest in stocks of the respective estates, to any indebtedness due from George J. Rogers to the respective estates under the doctrine of retainer.

" 'As a general rule an executor or administrator has the right to and should retain from a legacy or distributive share the amount of any indebtedness which may be due to the estate by the legatee or distributee.' 24 Corpus Juris, p. 487, § 1317; 1 A.L.R. p. 991 et seq.

" 'And this rule applies as against an assignee of the legatee or distributee, or a person otherwise succeeding to his interest, and also against a representative who is a legatee or distributee.' 24 Corpus Juris, p. 488, § 1317; 1 A.L.R. p. 1031.

"Therefore, in entering into the agreement of September 18, 1934, George J. Rogers was giving his sisters nothing to which they were not entitled. Subject to the payment of the debts of the estates, these sisters were each entitled to one-third of all of the stock. Further, if George J. Rogers was indebted to the estates, to the extent of such indebtedness due to any one estate, these sisters were each entitled to one-third of George J. Rogers' interest in the stocks

of that particular estate. Of course, directly the sisters were not each entitled to said one-third last mentioned, but indirectly, as the personal representative of the particular estate was entitled to invoke the doctrine of retainer and to recover the stocks in the first instance and then, after the payment of the debts of that particular estate, to deliver the stocks to the said sisters. The referee cannot see where the agreement of September 18, 1934, changed this arrangement in so far as the rights between Mr. Rogers, Mrs. Ewing, and Ladora R. Waltz (or her personal representative, Newton Waltz, Executor) were concerned. It made more definite the responsibility of Mr. Rogers and made certain that the interests of Elizabeth R. Ewing and Newton Waltz, executor, in the stocks would not be further dissipated, and that Mr. Rogers' interest therein could be located after the amount of his indebtedness to the estate and, therefore, his indebtedness to Mrs. Ewing and to Newton Waltz, executor, had been ascertained by the commissioners of account. In construing these two agreements of September 18, 1934, and April 15, 1935, the above situation of the parties must be borne in mind.

"The Contract of September 18, 1934.

■ "The referee is of the opinion that, in so far as Mr. Rogers, individually, had any interest in said stocks and securities, that the agreement of September 18, 1934, constituted a pledge agreement.

" 'The word "pledge" has a legal and well defined interpretation. Broadly speaking it is a transfer, bailment, or deposit of personal property as a security for a debt or other obligation. More specifically, it is a bailment or delivery of goods by a debtor to his creditor, to be.kept until the debtor's obligation is discharged; a deposit of personal effects, not to be taken back, but on payment of a certain sum, by express stipulation to be a lien upon it.' 49 Corpus Juris, p. 895, § 1.

" 'The word "pledge" is also sometimes used to describe the article or articles of personal property thus delivered by one person to another as security for the debt or obligation, but this is using the word in a colloquial, rather than a technical, sense.' 49 Corpus Juris, p. 896, § 1.

" 'The word "pawn" has the same legal signification as "pledge," and is often referred to as being synonymous with the latter word. In this respect "a pawn" may be defined as a mere collateral security for the payment of a debt, a species of bailment which arises when personal property is deposited with another as security for some debt or engagement, and which is made for the mutual benefit of the parties. But in common usage the word "pawn" is applied to a pledge of chattels as distinguished from that of choses in action; and in a more limited sense has been employed to mean a deposit of personal property made to a pawnbroker as security for a loan.' 49 Corpus Juris, p. 896, § 2.

" 'Jones, in his valuable work on Pledges (section 1), says: "A pledge may be defined to be a deposit of personal property as security, with an implied power of sale. upon default. Lord Holt, who was the first to make a systematic statement of the general law of bailment, defined a pawn to be that sort of bailment 'when goods or chattels are delivered to another to be a security to him for money borrowed of him by the bailor.' Sir William Jones defined it to be 'A bailment of goods by a debtor to his creditor, to be kept by him till his debt is discharged.' The definition given it by Judge Story is 'a bailment of personal property as a security for some debt or engagement.' " ' First Nat. Bank v. Harkness, 42 W.Va. 156, 164, 24 S.E. 548, 552, 32 L.R.A. 408.

■ "In the referee's opinion, all of the elements of a pledge are present in the contract of September 18, 1934.

" 'The necessary elements of a pledge are: (1) A pledgor and a pledgee. (2) A debt or obligation. (3) A contract of pledge. And in order to constitute a contract one of pledge the following elements are necessary: (1) The possession of the pledged property must pass from the pledgor to the pledgee or to some one for him. (2) The legal title to the pledged property must remain in the pledgor. (3) The pledgee must have a lien on the property for the payment of a debt or performance of an obligation due him by the pledgor or some other person. (4) There must be a right of redemption in the pledgor. It may be made upon such terms and conditions as the parties agree upon.' 49 Corpus Juris, 900, § 13.

■ "The Security Trust Company under the terms of the agreement is what is known in the law as a pledgeholder.

" 'Where the pledgor and pledgee select a third person to hold the property pledged, for the purposes of the pledge, he is called

the "pledgeholder."' 49 Corpus Juris, p. 896, § 4.

" 'In order to perfect the contract of pledge the delivery need not be made to the creditor himself, but it will be sufficient if the thing pledged is placed in the hands of a third person chosen by debtor and creditor to hold for the creditor, provided such third person knows of the trust and accepts the obligation it imposes.' 21 Ruling Case Law, p. 647, § 13.

" 'In the absence of statute, it is immaterial to the validity of a pledge whether the pledgee himself holds the property or a third person holds it for him; and therefore, where the parties all agree that the property shall be held as security for the pledgee, delivery of possession, instead of being made directly to the pledgee, may be made to an agent, or trustee, of the pledgee; or, by agreement, it may be delivered to, or left in the possession of, a third person to hold for the pledgee, provided the third person has notice of the trust and accepts the obligation it imposes.' 49 Corpus Juris, p. 916, § 42.

"Our West Virginia Supreme Court, while recognizing the general rule that 'for a pledge of personal property to be effectual, it is necessary that the possession of the property is given to the pledgee,' has held that delivery by the pledgor to the pledgor's agent may constitute a sufficient delivery:

" 'Where a party residing in Philadelphia gives the following order to his agent in the city of Parkersburg: "Mr. C. S. Fewsmith, Parkersburg, W. Va.: Will please hold to the order of Peter C. Hollis and J. L. Richards, trustees of the estate of Samuel Simes, deceased, my stock of lubricating oil stored in my oil tank in Parkersburg, W. Va., as collateral security for the return of $7,500, borrowed and received of them, and oblige, truly, Wm. W. Harkness;" which paper was indorsed: "Accepted. Parkersburg, W. Va., May 23rd, 1888. (Signed) Crowell S. Fewsmith,"—said Fewsmith being at the time the agent of said Harkness in possession of said oil,—the acceptance of such order transferred the possession of the oil to said trustees of Samuel Simes, deceased, and the oil was thereby pledged for the payment of said borrowed money.' First Nat. Bank v. Harkness, 42 W.Va. 156, 24 S.E. 548, syl. 2, 32 L.R.A. 408.

"The designation of the Security Trust Company, the pledgeholder in the contract of September 18, 1934, as 'trustee' is not inconsistent with its being the pledgeholder.

" 'The duties and relations of a pledgor and pledgee are governed more by the general maxims of equity than by the strict rules of the common law. The very nature of the transaction gives rise to a trust relation between the pledgor and pledgee, with its consequent duties to protect the debt or obligation and the collateral. For the purposes of the pledge, the pledgee holds the pledged property in trust first for himself to the extent of his claim and then for the pledgor; and the same rules apply whether the collateral pledged is the obligation of a third person or of the debtor himself. If the duties of the pledgee as trustee for the debtor are defined by express contract, the terms of the contract govern as to the nature and extent of the trust; but limitations in the contract upon the liability which the law would imply against the pledgee must be plainly expressed.' 49 Corpus Juris, p. 920, § 52.

It was not necessary that the contract of September 18, 1934, being a contract of pledge, should be recorded.

" 'Although said pledge was evidenced by writing, it need not be recorded to make it effective as a lien on said oil.' First Nat. Bank v. Harkness, 42 W.Va. 156, 24 S.E. 548, 549, syl. 4, 32 L.R.A. 408.

" 'Since a contract of pledge ordinarily is not required to be in writing, in the absence of statute requiring it, a written contract of pledge need not be registered or recorded; and statutes are inapplicable to such a pledge, which require the recording or registration of a contract of sale, an assignment in trust, or a mortgage.' 49 Corpus Juris, p. 909, § 34.

"Probably, the reason for this is because the pledgor is required to deliver the possession to the pledgee, and the delivery constitutes 'notice to third persons.'

" 'Under both the civil and the common law, it is essential to the validity of a pledge of personal property that either actual or constructive possession of the pledged property be delivered to the pledgee, or to some one as his agent or representative, or, under some statutes, to a third person agreed upon as pledgeholder. In some of these jurisdictions this rule is affirmed by statute, declaratory of the civil or common law. The purpose of this requirement is not only as evidence of the contract of pledge but also as

notice to third persons dealing with the property.' 49 Corpus Juris, p. 910, § 35.

" 'One of the reasons, and probably the chief reason, for the alleged general rule that a deposit of the thing pledged is an indispensable attribute of a valid pledge, is that such a pledge is indispensable to prevent the possession by the pledgor of the thing pledged from giving to him a false credit, just as the failure to deliver personal property sold causes a false credit to the vendor and avoids the sale.' Pierce v. National Bank of Commerce (C.C.A.) 268 F. 487, 492.

■ " 'Unless prohibited by statutes, a pledge may be made of a chose in action, such as * * * a bond; * * * a certificate of corporate stock. * * *' 49 Corpus Juris, p. 902, § 20.

"A pledge may be made not only to secure debts and obligations created at time of delivery, but also to secure pre-existing debts and contingent liabilities. 49 Corpus Juris, p. 902, § 22.

"Every contract, express or implied, by which the possession of personal property is transferred as security only, is generally deemed to be a pledge. 49 Corpus Juris, p. 904, § 24, citing First National Bank of Parkersburg v. Harkness, 42 W.Va. 156, 24 S.E. 548, 32 L.R.A. 408.

"The contract of September 18, 1934, transferred only possession of, not title to, the stock certificates, to the Security Trust Company.

" 'A pledge is a transfer merely of the possession of personal property, and not of the title, as security for the payment of some debt or the performance of some obligation by the pledgor, the pledgor retaining his title and the pledgee having only a special property in the property pledged, with power to retain it until the debt is paid or the obligation performed in accordance with the terms of the pledge contract, and with power to sell or otherwise dispose of it in case of default on the part of the pledgor, and the pledgor having the right to redeem at any time, in accordance with the terms of the contract. It is a kind of bailment and security; but is always a pledge until its status has been changed by foreclosure or further contract of the parties.

" 'Primary purpose of a pledge is to put it in the power of the pledgee to reimburse himself for the money advanced when it becomes due and remains due and unpaid, and the contract carries with it an implication

that the security shall be made effectual to discharge the obligation.' 49 Corpus Juris, p. 896, § 5.

" 'Jones, Pledges, § 1, says: "Every contract by which the possession of personal property is transferred as security only is to be deemed a pledge. In Georgia a pledge or pawn is declared to be property deposited with another as security for the payment of a debt." ' First Nat. Bank v. Harkness, 42 W. Va. 156, 165, 24 S.E. 548, 552, 32 L.R.A. 408.

" 'The distinction between a pledge and a mortgage is stated in Jones, Chat.Mortg. § 4, as follows: "The chief distinction between a mortgage and a pledge is that by a mortgage the general title is transferred to the mortgagee, subject to be revested by the performance of the condition; while by a pledge the pledgor retains the general title in himself, and parts with the possession for a special purpose." And the same author in his work on Pledges (section 7) says: "A pledge differs from a mortgage of personal property in being a lien upon property, and not a legal title to it. The legal title to the property pledged remains in the pledgor, while a mortgage passes the legal title of the property itself to the mortgagee, subject to be revested in the mortgagor upon the performance by him of an express condition subsequent." ' First Nat. Bank v. Harkness, 42 W.Va. 156, 166, 24 S.E. 548, 552, 32 L.R.A. 408.

"In the answer of Elizabeth R. Ewing filed herein on November 18, 1936, paragraph 'III' thereof, as has been seen, it was alleged that at the time of the delivery of said stocks 'the said George J. Rogers executed assignments of all said stocks.' This would seem to be denied in the second paragraph of the special replication of the Trustee in Bankruptcy, the denial being in these words, 'Nor is it true, as therein alleged, that, at the time of said delivery, the said George J. Rogers executed assignments of all of said stocks for the purpose of transferring title thereto.'

"So far as the referee can see, it is not very material whether there was an assignment of the stock certificates or not. There is no denial in the pleadings that the agreement of September 18, 1934, was executed by the parties and that the agreement went into effect and that the stocks were delivered pursuant to said agreement. As the referee has pointed out, the agreement constituted what is known as a pledge and it was not necessary for legal title to be

passed from Rogers, in his fiduciary capacities, to the trust company in order to effect 'a pledge.' But assume that the stock certificates were properly assigned and that the assignee therein named was the Security Trust Company, the Security Trust Company would thereby take the legal title, but that would not necessarily render the agreement of September 18, 1934, not a pledge.

" 'A bill of sale or other transfer of property absolute in form will be construed as a pledge where it appears, either from the instrument itself or from other evidence, that it was intended as a security only. It is not necessary, to the application of this rule, that an express promise on the part of the transferor to pay the debt shall appear.' 49 Corpus Juris, p. 907, § 30.

"And there is nothing in the statute law of the State of West Virginia which would render such a pledge of stocks a preference in favor of Elizabeth R. Ewing and Newton Waltz, executor. The statute law of the state of West Virginia affecting this situation is found in the 1931 Code, chapter 40, article 1, section 5, in part, as follows:

" 'Every transfer or charge made by an insolvent debtor attempting to prefer any creditor of such insolvent debtor, or to secure such a creditor, * * * for a debt to the exclusion or prejudice of any other creditor, shall be void as to such preference or security, but shall be taken to be for the benefit of all creditors of such debtor, and all the property so attempted to be transferred or charged shall be applied and paid pro rata upon all the debts owed by such debtor at the time such transfer or charge is made: Provided, That any such transfer or charge by an insolvent debtor shall be valid as to such preference or priority unless a creditor of such insolvent debtor shall institute a suit in chancery within one year after such transfer or charge was made to set aside and avoid the same. * * * And provided further, That nothing in this section contained shall be taken to affect any transfer of bonds, notes, stocks, securities or other evidence of debt in payment of, or as collateral security for the payment of, a bona fide debt, * * * whether such transfer is made at the time such debt is contracted or indorsement made or for the payment or security of a preexisting debt.'

"The agreement of September 18, 1934, provided for the bankrupt executing a note for $90,000 payable to the Security Trust Company, trustee, secured by a deed of trust on real estate, and the deposit of the stocks with the trust company to be held intact, 'for the express purpose of protecting and saving harmless from loss or damage the estate of the said Ladora R. Waltz, deceased, and Elizabeth R. Ewing * * * in the proportion that the said George J. Rogers may be found indebted to such estates, on the basis of the values thereof as of August 13, 1933, and the intent being that such securities shall be turned over to and delivered to the estate of the said Ladora R. Waltz, deceased, and Elizabeth R. Ewing in ratio to the indebtedness of the said George J. Rogers to the same, and that should a deficit arise the said George J. Rogers shall immediately make payment in full of the same.'

"The referee is of the opinion that said agreement constituted a pledge.

"The So-Called Escrow Agreement.

"The attorneys for the trustee in bankruptcy insist that the so-called escrow agreement of April 15, 1935, was a recognition of the fact that George J. Rogers was entitled to one-third of the stock mentioned in the agreement of September 18, 1934; that said so-called escrow agreement was a setting apart of said one-third part to the said Rogers. It is true that there is a recital in said escrow agreement that, 'it is now desired to provide specifically for the transfer of such stocks * * * as are due the parties of the first and second parts of this agreement from various estates in which they are beneficiaries.' But there is an agreement contained in paragraph I that, 'The said Security Trust Company shall hold, manage and treat the same as a trust fund and distribute the principal in compliance with legal instructions after the restraining order has been legally determined.'

"If the one-third of the stocks which were included in 'Schedule A' with the escrow agreement under the heading 'Security Trust Company, Escrow Agent,' were to be treated as the stocks of George J. Rogers free of liens and incumbrances (except said attachment), would not said escrow agreement have provided for the delivery of said stocks to the said Rogers after the said attachment proceeding was dismissed? It seems to the referee that the terms of said escrow agreement were rather ambiguous as to what the Security Trust Company was to do with said stocks in the event that the writ of attachment should be dismissed.

"It would seem to the referee that the purpose of the so-called escrow agreement was to give to the said Security Trust Company power to effect the ready transfer of the stocks held by it under the agreement of September 18, 1934. No reference was made in said agreement of April 15, 1935, to the previous agreement. There was no express intent to modify or revoke the previous agreement. Can it be said that said agreement of September 18, 1934, was modified or revoked by the agreement of April 15, 1935, by implication?

"The referee cannot clearly see that said agreement of April 15, 1935, would modify or revoke the agreement of September 18, 1934, in any respect. It simply gave to the Security Trust Company more power in respect to the stocks held by it and provided for the possible delivery to Newton Waltz, executor of the last will and testament of Ladora R. Waltz, deceased, and to Elizabeth R. Ewing, each, to the one-third of the stocks to which they were clearly entitled.

" 'Things once proved to exist in a particular state are presumed to continue in that state until the contrary is established by evidence, either direct or presumptive.' Moore v. Ohio Valley Gas Company, 63 W.Va. 455, 60 S.E. 401, 402.

" 'Proof of the existence at a particular time of a fact of a continuous nature gives rise to an inference within logical limits that it exists at a subsequent time.' 22 Corpus Juris, p. 86, § 28.

" 'This presumption of continuance of facts once shown to exist has been applied to afford a presumption of the continuance of * * * relations between persons, especially where contractual, * * * the course of business dealing between persons, * * * or fiduciary position. * * * A contract obligation shown to have existed at one time will be presumed to continue until its discharge is shown, and accordingly an indebtedness shown to have existed is presumed to continue.' 22 Corpus Juris 87, § 29.

"And so the referee holds that the escrow agreement of April 15, 1935, did not terminate the agreement of September 18, 1934.

"The Effect of the Bankruptcy Proceeding upon the Agreement of September 18, 1934.

"Let us first consider the duties and the title of the trustee in bankruptcy in relation to the questions here involved.

"Two sections of the bankruptcy statute are pertinent. They are:

"Section 47a (2), Bankr.Act, 11 U.S. C.A. § 75 (a) (2), in relation to 'Duties of Trustees': 'Such trustees, as to all property in the custody or coming into the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies, and powers of a creditor holding a lien by legal or equitable proceedings thereon; and also, as to all property not in the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies, and powers of a judgment creditor holding an execution duly returned unsatisfied.'

"Section 70, Bankr.Act, 11 U.S.C.A. § 110, in relation to 'Title to property': '(a) The trustee of the estate of a bankrupt, upon his appointment and qualification, and his successor or successors, if he shall have one or more, upon his or their appointment and qualification, shall in turn be vested by operation of law with the title of the bankrupt, as of the date he was adjudged a bankrupt, except in so far as it is to property which is exempt, to all * * * (4) property transferred by him in fraud of his creditors; (5) property which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him.'

"In relation to said section 47, Gilbert's Collier on Bankruptcy (3d Ed.) p. 698, §§ 937, 938, and 939, says:

" '937. Property vested in trustees.—In General—The property which constitutes the estate of the bankrupt, and vests in the trustee, is considered fully in the discussion under section seventy.

" '938. Rule existing prior to 1910.— Prior to the amendment of 1910 the trustee was not clothed with the privileges of a judgment creditor. The trustee's title as against a claim under an unrecorded conditional sale, though the State law required record, did not prevail. This rule still applies where property was acquired by the bankrupt on a conditional sale contract prior to the amendment. The Supreme Court had held in effect that a trustee in bankruptcy under an unrecorded contract of conditional sale was only vested with the title and interest of the bankrupt in the property acquired by him under such contract.

" '939. Effect of Amendment of 1910.— The trustee no longer "stands in the shoes of the bankrupt." Decisions holding that a trustee has no other right than belonged

to the bankrupt are no longer controlling. The amendatory Act of 1910 amended subdivision 2 of subsection a by providing in effect that the trustee shall have the same title to property in the custody of the court that a creditor holding an execution or other lien by legal or equitable proceedings levied against that property, would have under a State law; and, as to property not in the custody of the court, that the trustee shall stand in the position of a judgment creditor holding an execution returned unsatisfied. It was to obviate the prior limitation upon the right of a trustee to attack unrecorded conditional sale contracts and other like liens, that the amendment was passed. The purpose of the amendment was to give to the trustee the rights of a lien or judgment creditor, thereby enabling him to protect general creditors from unrecorded liens, unlawful transfers, spurious claims and other dissipations of the assets of the estate, which a lien or judgment creditor might have prevented had bankruptcy not intervened. The class of cases, unprovided for by the original act, and intended to be reached by the amendment, was that in which no creditors had acquired liens by legal or equitable proceedings and the purpose of the amendment was to vest in the trustee, for the interest of all creditors, the potential rights of creditors potential with such liens. The language is readily susceptible of this construction. It aptly refers to such rights, remedies and powers as a creditor holding a lien is entitled to under the law, rather than to the rights, remedies and powers of a creditor who had actually fastened a lien on the property of the bankrupt estate. The amendments vest in the trustee, by operation of law, a lien equivalent in all respects to that acquired upon the property coming into the custody of the trustee, by virtue of legal or equitable proceedings instituted against the bankrupt by a creditor, but does not necessarily give him the status of a purchaser without notice. The trustee does not acquire the status of a bona fide purchaser or lienor; he takes merely such interest in the property as the bankrupt or his judgment creditors had. His rights in respect to the property against which the lien is asserted flow from the amendment and not from the creditors of the estate, for whose benefit such rights must be exercised. It has been held that the lien thus acquired by the amendment reaches generally all the property which comes into the possession of the court and is not limited specially to property which is subject to unrecorded chattel mortgages or contracts of conditional sale. The State law controls as to what rights a lien or execution creditor would have.'

"See, also, Remington on Bankruptcy (4th Ed.) vol. 4, page 274, § 1507.

"I am able to discover nothing in the above which makes it imperative for the trustee to take possession of the pledged property in the absence of fraud or dissipation of the property. I am aware that the first text-writer holds that the trustee 'takes an absolute title which, of course, carries with it the right of possession.' Gilbert's Collier on Bankruptcy (3d Ed.) p. 1166, § 1448.  But he follows this by saying: 'He is vested with such title only for the purpose of administration and distribution of the estate among the bankrupt's creditors. He represents both the bankrupt and creditors. He succeeds to the right and title of the bankrupt for the benefit of his creditors, and in this capacity occasionally has rights not possessed by the bankrupt, as for instance, the right to recover assets which the bankrupt has conveyed in fraud of his creditors. But otherwise he can recover only such property as the bankrupt could have controlled and collected personally at the time when his rights passed to his successor.'

"As has been seen, under the discussion of 'Pledge,' the only way the pledgor may repossess the pledged property is to discharge the obligation for the payment of which it was pledged. And this is recognized by the ex-writer above cited.

" 'The lien of a pledgee is not only recognized, but is unimpaired, and he has the right to retain the property until it is released by a payment of his claim. The validity of a contract of pledge must be decided by the law of the State where made. Generally speaking, and under the laws of most of the States, there must be a delivery of the possession of the property pledged to the pledgee, to give rise to the lien in his favor, and a retention of possession, but such delivery may be made symbolically, and the question of possession may largely depend upon the intention of the parties dealing in good faith, and upon the nature and location of the property itself. Under circumstances showing that the transaction is in good faith, and that the requirement of delivery would be such a hardship as to defeat the purpose of the contract, the lien may be sustained as an equitable lien rather than a pledge. A bankrupt pledgor is not

justified in asking that the exercise of a present right of the pledgee to realize upon his security be deferred indefinitely to await a purely problematical increase in the price which might be realized at the sale. Nor are the general creditors of the bankrupt pledgor entitled to this indulgence.'" Gilbert's Collier on Bankruptcy (3d Ed.) p. 1101, § 1376.

"The bankruptcy of Mr. Rogers, the pledgor, does not terminate the right of the pledgeholder to the possession of the certificates.

" 'Since possession is the essence of a valid pledge, the pledgee is entitled to retain possession and control of the pledged property until the purposes of the pledge have been satisfied, so long as he does not breach the terms of the contract. In the usual case of a pledge to secure payment of a debt, the pledgee can retain possession until the debt has been tendered or paid in full.' 49 Corpus Juris, p. 942, § 85.

" 'The pledgee's right to possession of the pledged property terminates when the purposes of the pledge have been fulfilled. But the right is not lost by subsequent bankruptcy of the pledgor.' 49 Corpus Juris, p. 942, § 87.

"We especially direct attention to the opinion of the Supreme Court of the United States in the case of Yeatman v. New Orleans Savings Institution, 95 U.S. 764, 24 L.Ed. 589. That case holds (syllabi 1 and 2):

" '1. The assignee in bankruptcy takes the title to the bankrupt's property, subject to all equities, liens or incumbrances which existed against the property in the hands of the bankrupt, whether created by operation of law or by act of the bankrupt, except such attachments and transfers as the law avoids.

" '2. Where a pledge of property was made in good faith by the bankrupt and for a valuable consideration, and not in violation of the provisions of the Bankrupt Law, the assignee cannot recover the property except by redeeming it.'

"The Supreme Court has adopted certain General Orders in Bankruptcy. General Order No. 28, 11 U.S.C.A. following section 53, provides: 'Whenever it may be deemed for the benefit of an estate to redeem and discharge any mortgage or other pledge, or deposit or lien, upon any property, real or personal, or to relieve said property from any conditional contract, and to tender performance of the conditions thereof, * * * the trustee * * * may file his petition therefor; and thereupon the court shall appoint a suitable time and place for the hearing thereof, notice of which shall be given as the court shall direct, so that all creditors and other persons interested may appear and show cause, if any they have, why an order should not be passed by the court upon the petition authorizing such act on the part of the trustee.'

"In relation to a similar statutory provision in the Bankruptcy Act of 1867 (14 Stat. 517), the United States Supreme Court said: 'This is a distinct recognition of the rights of the pledgee as against the assignee. Of course, where the pledge is in fraud of the bankrupt law, and consequently void, the assignee may disregard the contract of pledge, and recover the property for the benefit of creditors. Not so where the pledge, as in this case, was made in good faith, for a valuable consideration, and not in violation of the provisions of the bankrupt law.' Yeatman v. New Orleans Savings Institution, 95 U.S. 764, 767, 24 L.Ed. 589.

" 'The trustee takes title to property of the bankrupt which is mortgaged or otherwise encumbered, subject of course to the lien thereon. Accordingly the trustee has the right to redeem property which has been pledged by the bankrupt. * * *' 7 Corpus Juris, p. 116, § 193.

"I wish to direct attention to two West Virginia cases:

" '* * * the question is, what right to said oil remained in W. W. Harkness at the time said attachment was levied, after pledging said property to the trustees of Samuel Simes, deceased? What right could said W. W. Harkness assert in any court to repossess himself of said 1,800 barrels of oil without paying said sum of $7,500, for which it was pledged? He certainly could maintain no such claim successfully, and the question is, if said Harkness had no right to said oil superior to said pledgee's could the defendant in error, under its attachment lien, have or take more than Harkness had at the time of the levy? We find the law upon this question stated by Shinn, Attachm. p. 611, § 318, who thus states the law: "A creditor cannot, by attachment, acquire any higher or better right in the property attached than the debtor himself had at the time of the levy of the attachment, unless he can show that there has been fraud or collusion to his

detriment." The lien obtained by attachment is subject to all previous liens by bona fide creditors; therefore the effect of the attachment is to subject only the interest which the defendant has in the property at the time of its seizure, and, having reached the conclusion that the oil in said tank was pledged to the payment of said sum of $7,500, with its accrued interest, we hold that said attachment is subject to said pledge, and can only be satisfied out of the surplus remaining from the sale of said oil after the satisfaction of the said sum of $7,500, with its accrued interest.' First Nat. Bank v. Harkness, 42 W.Va. 156, 168, 24 S.E. 548, 553, 32 L.R.A. 408.

" 'The doctrine well settled in this state, and the one generally recognized, denies to the creditor seeking to recover his debt by legal process any right or interest in the property sought to be subjected superior to that held by the debtor at the time of the levy. The extent of the debtor's right in the property determines the extent of the right of the attaching creditor. By the issuance and levy of the process is effected nothing more than the sequestration of the debtor's interest in such property. If he had no interest, service of the process avails nothing. It is abortive. Our cases uniformly so hold. Neill v. Produce Co., 41 W. Va. [37] 38, 23 S.E. 702; First Nat. Bank v. Harkness, 42 W.Va. 156, 24 S.E. 548, 32 L.R.A. 408; Wall v. Norfolk Railroad Co., 52 W.Va. 485, 44 S.E. 294, 64 L.R.A. 501, 94 Am.St.Rep. 948; Lipscomb's Adm'r v. Condon, 56 W.Va. [416] 417, 49 S.E. 392, 67 L.R.A. 670, 107 Am.St.Rep. 938; Dixon-Pocahontas Fuel Co. v. Grain Co., 71 W. Va. [715] 717, 77 S.E. 362, Ann.Cas.1914C, 115. See, also, 4 Cyc. 632, et seq.' Howell v. McCarty, 77 W.Va. 695, 698, 88 S.E. 181, 182.

"Another provision of the bankruptcy statute applicable here is section 57(h), Bankr.Act, 11 U.S.C.A. § 93(h), relating to proofs and allowance of claims, as follows:

" 'The value of securities held by secured creditors shall be determined by converting the same into money according to the terms of the agreement pursuant to which such securities were delivered to such creditors or by such creditors and the trustee, by agreement, arbitration, compromise, or litigation, as the court may direct, and the amount of such value shall be credited upon such claims, and a dividend shall be paid only on the unpaid balance.'

"Summary.

"The referee, therefore, will enter an order overruling the petition of the trustee in bankruptcy filed on September 28, 1936, praying that the Security Trust Company, as trustee, may be ordered to surrender to the trustee in bankruptcy certain stocks. It will not be understood, however, that this does mean that we are no longer interested in said stocks in this bankruptcy proceeding. The extent of the indebtedness of the bankrupt estate to Newton Waltz, executor, and Elizabeth R. Ewing, is yet in dispute. It is unlikely that the trustee in bankruptcy will desire to redeem said pledged property under General Order No. 28. Before either Newton Waltz, executor, or Elizabeth Ewing will be allowed any unsecured claim against the estate of the bankrupt, it will be necessary to determine the value of their said security, under the provisions of section 57(h) of the bankruptcy statute above quoted. It may be all right for Newton Waltz, executor, and Elizabeth R. Ewing, to divide the stocks between themselves 'in the proportion that the said George J. Rogers may be found indebted to such estates, on the basis of the valuation thereof as of August 13, 1933,' as provided in the agreement of September 18, 1934, but, if they are to be allowed any unsecured claim against the estate of this bankrupt, it will be necessary to determine the value of said stocks under said section 57(h).

"The order to be entered is predicated upon the assumption that there is no equity in said stocks for the bankrupt estate and that the indebtedness of the estate to Waltz, executor, and Mrs. Ewing is greater than the value of the stocks. If, in the last analysis, after the Waltz, executor, and Ewing claims are allowed, it should appear that the amounts of their claims against the bankrupt estate are less than the value of the stocks, then, of course, a turn-over order will be necessary in relation to the amount of the bankrupt estate's equity in said stocks."

Order may go accordingly.