MODELL PAWNBROKERS, INC., Plaintiff, *v.* PAUL MOSS, as Commissioner of Licenses of the City of New York, Defendant.

Supreme Court, Special Term, New York County, April 24, 1945.

*Arthur Garfield Hays, Sidney Struble* and *Shirley H. Mond-shine* for plaintiff.

*Ignatius M. Wilkinson, Corporation Counsel (Harry Zamore* of counsel), for defendant.

PECK, J. This is an action for a declaratory judgment against the Commissioner of Licenses. Plaintiff, as a pawnbroker, desires to engage in the business of refinancing loans made by other pawnbrokers. It originally adopted a plan of accompanying the pledgor to the house of the pawnbroker where the loan was outstanding and the pawn held, there redeeming the pawn and then making a new loan on the same collateral. The Commissioner of Licenses challenged the legality of this method of doing business and threatened to revoke plaintiff's license as a pawnbroker if the practice was continued. Plaintiff thereupon sought a declaratory judgment and the court (SCHREIBER, J.) held that the plan was illegal as doing business in more than one house. (*Modell Pawnbrokers* v. *Moss*, 182 Misc. 581.)

In discussing the nature of a pawn ticket, Judge SCHREIBER observed that it was not a security or evidence of debt, but was personal property which might freely be pledged, transferred or assigned. On the strength of this observation, the plaintiff proposed to the Commissioner of Licenses modifications of its plan to meet the objection of doing business in more than one house. Plaintiff suggested as alternatives: (1) making a loan upon the outstanding pawn ticket and treating it as the pawn,

without redeeming the collateral; (2) making a loan upon the outstanding pawn ticket and then redeeming the collateral through the agency of some messenger service and substituting the collateral for the pawn ticket as the security for the loan; (3) making an advance without collateral or interest to a trusted borrower, in order that he may redeem the pledge with the other pawnbroker, and then make a loan on the redeemed article. Defendant challenged the legality of all these methods of doing business and threatened to revoke plaintiff's license if it engaged in such business. Plaintiff now seeks a declaratory judgment as to the legality of the proposed alternatives.

Defendant questions the propriety of a declaratory judgment in this case upon the ground that plaintiff is merely asking for advice as to how it may conduct its business in the future. Plaintiff counters that it has employed these three methods in the past and has suspended them only because of the threats of the defendant, and contends that it should be allowed a declaratory judgment rather than be subjected to the risks of testing its rights in litigation following a revocation of its license. The evidence indicates that the plaintiff has in the past employed these various methods of doing business and it seems appropriate, therefore, to give a declaratory judgment.

The first method avoids the objection of doing business in more than one house. The loan is made upon the pawn ticket issued by another pawnbroker, without any redemption of the collateral behind that pawn ticket and without reference to that other pawnbroker or that collateral. The transaction is a single one, entirely consummated in plaintiff's house upon the security of the pawn ticket alone. The question as to this transaction is whether a pawn ticket is a permissible subject of a pawn under the law.

The plaintiff relies on section 52 of the General Business Law and upon the forepart of Judge SCHREIBER's opinion in the previous case as establishing that a pawn ticket itself is a proper subject of a pawn. Section 52 defines " pawnbroker " as any person loaning money on pledge of personal property other than securities or printed evidences of indebtedness. Plaintiff construes this section as the equivalent of providing that a pawnbroker may loan on *any* personal property, other than securities or printed evidences of indebtedness, and concludes that as a pawn ticket is personal property, not a security or evidence of debt, it is the proper subject of a pawn. Judge SCHREIBER has said, undoubtedly correctly, that a pawn ticket is personal property which may be freely transferred, assigned

or pledged. Plaintiff construes Judge SCHREIBER's words as the equivalent of a holding that a pawn ticket is a proper subject of pawn.

The court does not read either the statute or Judge SCHREIBER's opinion as concluding the question.* The statute is only a generic description of a pawnbroker, as including one who loans money on pledge of personal property, excluding the accepted banking function of loaning on securities or evidences of indebtedness. The statute does not expressly or by necessary implication make all personal property of every nature and description, other than securities or evidences of indebtedness, the proper subject of pawn. Likewise, Judge SCHREIBER's opinion on this point does no more than ascribe to a pawn ticket the character of personal property, other than securities or evidences of indebtedness, and falls short of holding that a pawn ticket is itself a proper subject of pawn.

The court therefore regards the question as an open one to be determined on the basis of the common conception and incidents of pawnbroking and considerations of public policy.

Undoubtedly the common conception of a pawn is a tangible article of personal use. The pawnbroker serves personal needs for small loans where the security offered is some personal belonging readily handled, appraised, displayed and, if necessary, sold. The business is to be distinguished from banking and financing of intangibles. For example, a contract, although personal property, would not be a subject of pawn because it does not lend itself to handling as a pawn. Thus we have it stated in American Jurisprudence (Vol. 40, Pawnbrokers, Etc., § 2, p. 690): " ' Property ' as used in definitions of pawnbrokers is generally construed to include only such articles of personal property as might be actually delivered over to the possession and custody of the person who advances the money, and not as including stocks, bonds, mortgages, and other choses in action or evidences of debt.''

While the court has not found any New York case determining the availability of a chose in action as a pawn, and there is a paucity of authority elsewhere, the cases which have been found

---

* The court agrees with the statement made in the letter of plaintiff's counsel to the defendant on October 6, 1942, outlining plaintiff's proposal of refinancing pawn loans and requesting the defendant's views: " An examination of the statutes affecting pawnbrokers does not throw any light on the subject as to whether a pawnbroker may or may not refinance pawn tickets. Under these circumstances, the primary consideration would be whether the practice of refinancing of tickets is beneficial or detrimental to the general public, and whether this practice would be violative of the intent of the statute ".

in other jurisdictions support the statement quoted from American Jurisprudence. (*In Re Rogers,* 20 F. Supp. 120, 126; *City of Chicago* v. *Hulbert,* 118 Ill. 632, 637.) As stated in the latter case: " We think the legislature intended by the use of the word ' property ' to include only such articles of personal property as might be actually delivered over to the possession and custody of the person who advanced the money, and not stocks, bonds, notes or mortgages, or choses in action, or evidences of debt."

A chose in action may be transferred, assigned and pledged, as Judge SCHREIBER has noted, but it is not of that nature or species of property which is readily handled, appraised, displayed or sold and is not, therefore, the kind of property which can satisfactorily be treated as a pawn. Particularly is this apparent when we contemplate the auction sale of the pawn. The value of the pawn ticket is at most only the value of the tangible article behind it and prospective purchasers of a pawn ticket at auction would not have the slightest idea of the identity or value of the article behind the pawn ticket. Informed and intelligent bidding upon the ticket would be impossible and it is unlikely that the ticket would bring anything more than a very low and rankly speculative price. It is even probable that at the time of the sale of the pawn ticket there would be no article behind it, because it is quite likely that such article would have been sold at the end of a one-year period of pledge with the original pawnbroker, before the year of pledge of the pawn ticket with the second pawnbroker would expire. This additional risk militates further against the pawn ticket bringing anything upon realization sale.

It is the State's public policy, as manifested in various provisions of the statute, to throw definite protections around the pawnor, preserving the identity of the pawn, the registry of it by description and ultimately, upon nonrepayment of the loan, a sale of the pawn only after a year's time, and at public auction. The pledgor of a pawn ticket would have no assurance whatever of the preservation of his property because there would be no identity between the pawn period for the pawn ticket and for the article behind the pawn ticket pledged with another pawnbroker, and on any sale of the pawn ticket at public auction the pawnor would be seriously prejudiced by the circumstances above noted.

All of these considerations indicate the unsuitability and undesirability of using a pawn ticket as a pawn and it is therefore held that plaintiff may not make loans on the security of a pawn ticket.

It also follows that the second proposed method of doing business must be rejected. The loan there is made upon the pawn ticket, although it is contemplated to replace the ticket with the redeemed article behind the ticket. While the redemption and substitution, if promptly made, would avoid the practical objections before noted, they would necessarily be *in futuro* and dehors the loan on the pawn ticket. The statute [General Business Law, §§ 40–52] clearly contemplates a single completed transaction upon the making of the loan and pledge and issuance of the pawn ticket. Such a transaction upon the security of a pawn ticket is here held to be illegal, and it cannot be made legal by the anticipation or additional contractual arrangement, not contemplated by the statute, of substituting some other collateral, which substitution would necessarily become another and separate loan on different security, calling for the issuance of another pawn ticket. Furthermore, the proposal of redeeming the original pledge by messenger service, rather than by accompanying the pawnor to the original pawnbroker to redeem his pledge, is only beating the devil around the bush and is tantamount to doing business in more than one house.

At first blush there would seem to be no objection to the third proposal of advancing funds to the borrower to enable him to redeem his pledge with the first pawnbroker and making him a new loan upon the same collateral. That this method of doing business has not been clearly thought out or established by the plaintiff is apparent from the testimony and colloquy at the trial, where the plaintiff's witness referred to the arrangement as " a very short form of an I. O. U., no interest or anything like that " and plaintiff's counsel referred to it as a trust arrangement constituting the borrower as the trustee of the amount advanced to get the property and bring it back, with the consequence that he would be stealing the money if he was not faithful to the trust. Because of this confusion as to the nature and form of the arrangement, counsel suggested that plaintiff would have to get legal advice and asked the court to point out the extent to which such a program would be legal.

That this method of dealing with customers is no important part of plaintiff's business of refinancing pawn loans is indicated by plaintiff's evidence that it constituted only 5% of plaintiff's refinancing transactions and by the fact that relatively few customers would be so trusted. The advancing of money to customers without security is not a pawnbroking transaction and the court cannot approve the creation between pawnbroker

and customer of a new and uncertain relationship, foreign to the pawnbroking business and not contemplated by the statute. The understanding that the customer will immediately take the funds advanced by plaintiff to the house of another pawnbroker, there redeem his pledge and return forthwith to plaintiff's house to repledge the article, is only a slight variation of the original plan declared illegal by Judge SCHREIBER, and the temptation to " accompany " the borrower to the house of the original pawnbroker to make sure that he is faithful to his trust would be great. The court cannot blind itself to the reality of this business and foresees that this method of doing business would become substantial only if the plaintiff made sure of the redemption and repledge of the article held by the original pawnbroker, and in essence any such procedure would be doing business in more than one house in contravention of section 41 of the General Business Law.

The foregoing is the court's decision herein. Settle judgment.